Michael A. BRENNAN

v.

George A. VOSE, Jr. et al.

No. 98–300–Appeal.

Supreme Court of Rhode Island.

Jan. 12, 2001.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Randy Olen, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on December 4, 2000, on appeal from the denial of Michael A. Brennan's application for postconviction relief filed pursuant to G.L.1956 § 10–9.1–1. We affirm.

### Facts and Travel

Michael A. Brennan (Brennan or applicant) and his brother Thomas (Thomas) were tried separately for the brutal murder of eighty-one-year-old Lawrence Bello. Each was convicted of felony murder and sentenced to life imprisonment. Both convictions were upheld by this Court. The events that give rise to this appeal are set out in *State v. Brennan*, 526 A.2d 483

(R.I.1987). In brief, the facts are as follows.

On the morning of January 18, 1984, detectives found the body of eighty-one-year-old Lawrence Bello on the floor of his Providence apartment. The scene was horrific; Mr. Bello had been beaten, tortured, and brutally murdered. A bloody knife lay next to the victim's body, the word "kill," written in what appeared to be blood, was found on the wall. The entire apartment had been ransacked; there were overturned tables and mattresses, drawers emptied onto the floor, and holes punched in the walls. There was no sign of forced entry. Brennan and his brother Thomas, both of whom resided with their mother, a tenant of Mr. Bello's, in an apartment adjacent to the murder scene, subsequently were arrested for the murder.

Based on the evidence presented at trial, a jury convicted Brennan of felony murder, with robbery as the underlying felony. That conviction was affirmed by this Court. Brennan then filed an application for postconviction relief with the Providence County Superior Court. That application was denied. It is the denial of that application from which Brennan now appeals.

### Discussion

The applicant has raised several arguments in support of his appeal. First, Brennan contended that he was deprived of a fair trial as a result of the ineffective assistance of his trial counsel, Russell Sollitto (Sollitto or trial counsel). Specifically, Brennan asserted that he was deprived of his constitutional right to testify on his own behalf, that trial counsel failed to investigate and adequately prepare the case, and that his constitutional right to an impartial jury was violated. The applicant further argued that the postconviction court erred in denying a new trial based upon newly discovered evidence. Brennan next argued that the hearing justice erred in concluding that he lacked authority to

correct an error of fact relating to his direct appeal. Finally, he contended that cumulative error that occurred at trial and on his direct appeal mandates a new trial. We deem these claims to be without merit.

█ The law in Rhode Island is well settled that this Court will pattern its evaluations of the ineffective assistance of counsel claims under the requirements of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This *Strickland Test*, as adopted in *Barboza v. State*, 484 A.2d 881, 883 (R.I.1984), provides certain criteria that a complaining applicant must establish in order to show ineffective assistance of counsel. *State v. Brennan*, 627 A.2d 842, 844–45 (R.I.1993). The first prong of the test requires that applicant demonstrate that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment. *Id.* at 845 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693). Second, the applicant must show that such deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial. *Id.*

█ The first prong of the *Strickland Test* can be satisfied only by a showing that counsel's representation fell below an objective standard of reasonableness. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The applicant's first argument in his ineffective assistance claim is that counsel refused to allow him to testify on his own behalf at trial. Brennan contends that he was unaware that the decision to testify was his own and, that had he known, he would have testified, mainly to contradict the testimony of at least two of the state's witnesses. This question largely turned on the credibility of the witnesses presented at the postcon-

viction hearing. Both Brennan and Sollitto testified at the hearing. The hearing justice found that trial counsel testified credibly and further found that the decision not to testify was made by Brennan himself. The attorney testified that it was his usual practice to discuss this issue with his clients and to allow the client to make this important decision enlightened by his advice. Sollitto remembered that he was "pleased" upon hearing that Brennan did not want to take the stand in his own defense, because he saw the case as a "good reasonable doubt case."

The hearing justice found as a fact, based on the conflicting evidence presented at the hearing, that Brennan was fully aware of his right to testify on his own behalf and, in addition, that his decision not to testify was a voluntary one, made without any improper influence from counsel. Brennan admitted that Sollitto provided him with discovery for his review. He also sat through numerous pretrial hearings, at which time the witnesses whose testimony Brennan purportedly intended to contradict at trial gave their full testimony. Although counsel did not mention the specific conversations he had with Brennan with respect to this issue, the hearing justice was satisfied, as is this Court, that trial counsel discussed this issue with his client, and that the ultimate decision not to testify was made by Brennan.

█ Appellate counsel has invited this Court to adopt a rule providing for a *sua sponte* inquiry by the trial justice to insure that an applicant has made a knowing and voluntary waiver of his or her right to testify. We note that several jurisdictions have determined that it is incumbent upon the trial justice to engage in a colloquy with a defendant on the record to establish that his or her waiver of the right to testify is knowing, voluntary and intelligent. *See People v. Woodard*, 782 P.2d 1212 (Colo.Ct.App.1989); *People v. Curtis*, 681 P.2d 504 (Colo.1984); *Culberson v.*

*State,* 412 So.2d 1184 (Miss.1982), *aff'd,* 456 So.2d 697 (1984); *State v. Robinson,* 180 W.Va. 400, 376 S.E.2d 606 (1988); *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77 (1988). The majority of jurisdictions, however, have declined to require such an inquiry, instead citing the responsibility of defense counsel, not the trial justice, to advise his or her client of the right to testify and advise the client whether, in counsel's opinion the client should testify and explain the advantages or disadvantages of such a decision. *State v. Savage,* 120 N.J. 594, 577 A.2d 455, 473 (1990) (citing *United States v. Martinez,* 883 F.2d 750 (9th Cir.1989); *Ortega v. O'Leary,* 843 F.2d 258 (7th Cir.), *cert. denied,* 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988); *United States v. Janoe,* 720 F.2d 1156 (10th Cir.1983), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984); *Siciliano v. Vose,* 834 F.2d 29, 30 (1st Cir.1987); *People v. Longwith,* 125 Cal. App.3d 400, 178 Cal.Rptr. 136 (1981); *Torres–Arboledo v. State,* 524 So.2d 403 (Fla. 1988); *People v. Simmons,* 140 Mich.App. 681, 364 N.W.2d 783 (1985); *State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487, *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980)). We agree with the majority of jurisdictions and decline to adopt or establish any such rule.

▬ The next issue for our review, with respect to the issue of ineffective assistance of counsel, is Brennan's claim that Sollitto inadequately prepared his defense. We deem this claim to be without merit. As stated above, *Strickland* provides that trial counsel's effectiveness must be "reasonable considering all of the circumstances." 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. In this instance, Sollitto was the third counsel of record

having entered the case approximately three to four weeks before the trial commenced. The applicant contended that trial counsel failed to investigate certain alibi witnesses, yet his own recollection of the individuals he sought to testify was vague at best. In his decision the hearing justice stated

> "the [applicant] contended his counsel was deficient because he failed to interview and call certain alibi witnesses. No evidence in any form was presented at the hearing that these witnesses would alibi the [applicant] as he claims. Under the circumstances, the Court has no way to determine whether the counsel's failure to interview and call these witnesses could possibly have made any difference in the outcome of the trial."

The record is clear that Sollitto, a well-respected and seasoned trial attorney who has served the people of the State of Rhode Island as both a public defender and a prosecutor, participated in extensive pretrial arguments and relentlessly cross-examined the witnesses proffered by the state. Based on our review of the record and the circumstances surrounding the trial, we are satisfied that Sollitto adequately prepared his case and zealously defended his client. Consequently, we deny this part of Brennan's claim.

▬ The last argument made by the applicant in his ineffective assistance claim is that he was deprived his constitutional right to a fair and impartial jury. Brennan contends that Sollitto erred in refusing to strike a particular juror, whom Brennan felt was biased.[1] Sollitto testified that he was aware of this situation and attempted to use it to Brennan's tactical advantage. When asked why, after uncovering the apparent biases of the juror during his *voir*

---

1. The reasons for this alleged bias were that the prospective juror (juror number fifty-seven) revealed that the prosecutor assigned to the case was friendly with her husband, but she had only met the prosecutor "maybe twice" and she indicated that she did not see him socially. Juror number fifty-seven had been the victim of a burglary, the underlying felony for which Brennan was indicted, eight or nine years before the trial. The applicant also contended that this juror was biased because she worked with the wife of a police officer who would testify at trial, although she said their relationship was purely work-related, and they did not even have lunch together.

*dire,* he elected not to peremptorily challenge the juror or attempt to have her stricken for cause, Sollitto stated that he felt this particular juror would "bend over backwards" for them. The record discloses that juror number fifty-seven promised that she could be fair and impartial, and that she would assess the credibility of the witnesses without regard to any relationship she may have had with the prosecutor or the wife of a police officer. Sollitto stated, "I remember this vividly, getting the impression that I had gotten through to her, that she gave me the impression that she could be fair. She gave me the impression that she was going to bend over backwards for us." He also felt that it was better to take his chances with this juror, rather than replace her with one of the individuals remaining in the jury pool.[2]

This Court has clearly stated that we will not meticulously scrutinize an attorney's reasoned judgment or strategic maneuver in the context of a claim of ineffective assistance of counsel. "We are not in the business of second guessing the strategic choices of trial counsel when their choices are clearly reasonable and within the bounds of competent representation." *Brennan,* 627 A.2d at 851. We agree with the finding of the trial justice that jury selection is an art, not a science. Here, the record demonstrates that Sollitto made a strategic decision with respect to the juror in question. Further, the record reflects that Sollitto asked for a moment to consult with Brennan to determine whether he was satisfied with the chosen panel before stating that "the jury as seated is satisfactory to the [applicant]." For these reasons, we conclude that the decision made by Sollitto not to strike the juror in question was a reasoned, tactical determination that we will not second-guess.

■ We next must decide whether the hearing justice erred in refusing to grant a new trial based upon newly discovered evidence. In deciding an application for post-conviction relief on the ground of newly discovered evidence, the hearing justice applies the standard used for awarding a new trial on the basis of newly discovered evidence. *McMaugh v. State,* 612 A.2d 725, 731 (R.I.1992) (citing *Fontaine v. State,* 602 A.2d 521, 524 (R.I.1992) and *State v. Lanoue,* 117 R.I. 342, 346, 366 A.2d 1158, 1160 (1976)). This analysis consists of a two-part test in which the hearing justice must determine whether the evidence is, in fact, newly discovered or was available at the time of trial; whether the applicant was diligent in his or her pursuit to uncover the evidence for use at the original trial; whether the evidence is material to the issue and not merely cumulative or impeaching, and finally, whether the evidence would likely change the verdict at a new trial. *McMaugh,* 612 A.2d at 731–32 (citing *Fontaine,* 602 A.2d at 524 and *State v. Brown,* 528 A.2d 1098, 1104 (R.I.1987)). Only if this threshold has been satisfied is the hearing justice, required to exercise his or her independent judgment, and determine whether the newly discovered evidence is credible enough to warrant relief. *McMaugh,* 612 A.2d at 732. The applicant has not sustained this burden.

■ Brennan contended that, after his conviction, his brother Thomas confessed to the murder in a sworn affidavit, in which Thomas declared that he wanted to "clear [his] conscience" after Brennan's application for parole was denied. Thomas also asserted that he "never admitted this before because [he] was always hopeful that Michael would be able to prove his innocence." As the hearing justice aptly stated, "[t]he evidence was not 'undiscovered' at the time of trial * * * [i]t was simply unavailable at the time." The question then presented is whether this

---

**2.** Brennan testified that the only individuals who remained in the pool were elderly men and women. He stated that Sollitto told him that their chances would be better with juror number fifty-seven, as opposed to an elderly person, considering the heinous nature of the crime and the fact that it was perpetrated upon an eighty-one-year-old victim.

evidence would change the verdict or would merely be impeaching. The applicant contended that this evidence is exculpatory and, if granted a new trial, he would be acquitted. The hearing justice found that the sworn affidavit executed by Thomas Brennan to be void of any credibility. As we stated in *State v. Firth,* 708 A.2d 526, 531 (R.I.1998), when a person comes forward with an eleventh-hour confession that exculpates the defendant long after he or she has had several opportunities to do so (in this case after all of the declarant's direct and postconviction appeals had been denied), such circumstances demonstrate the unreliability of the testimonial evidence. With regard to the affidavit submitted by Thomas, the hearing justice found it to be "a patent effort at a belated fraternal sacrifice." He declared the affiant to be utterly unworthy of belief and found that Thomas had allowed his own brother to sit in jail until Thomas' chances at early parole had evaporated. In this determination the hearing justice was not clearly wrong, nor did he overlook or misconceive material evidence.

■ The final issue is the challenge by Brennan that the postconviction court erred in holding that it had no jurisdiction to correct an error of fact relating to his direct appeal. He argued on direct appeal that his cross-examination of a trial witness was improperly restricted and that this Court rejected his claim based on defense counsel's failure to make an offer of proof. The applicant contended that he attempted to make an offer of proof but was rebuffed by the trial justice because he was conducting cross-examination of a witness for the prosecution. The hearing justice declined to decide this issue on the grounds that such a task was not within the province of the Superior Court. We note that the trial witness about whom Brennan complains was a witness for the state and that Brennan had the opportunity to call him as a defense witness in his case in chief. Further, pursuant to Rule 25 of the Supreme Court Rules of Appellate Procedure, the applicant could have filed a petition for reargument of his appeal, within five days after the filing of the decision and did not. Accordingly, we deny the appeal on this ground. Finally, we reject Brennan's argument that the cumulation of error is so significant as to tip the scales in favor of a new trial.

After a thorough review of the record and the hearing justice's decision denying Brennan's application for postconviction relief, we conclude that the applicant has failed to meet the requirements set forth in *Strickland* to support his claim of ineffective assistance of counsel, nor could he sustain his claim for a new trial based upon newly discovered evidence. The determinations of a hearing justice in an application for postconviction relief will remain undisturbed on appeal unless there is clear error, or a showing that the hearing justice overlooked or misconceived material evidence. *Beagen v. State,* 705 A.2d 173, 176 (R.I.1998). Here, we discern no error in the hearing justice's evaluation of the evidence in Brennan's hearing or in his application of the relevant law. Accordingly, the appeal is denied and dismissed, the order appealed from is affirmed, and the papers of this case are remanded to the Superior Court.