Kenneth S. RICE

v.

STATE of Rhode Island.

No. 2009–344–Appeal.

Supreme Court of Rhode Island.

March 6, 2012.

See also, 811 A.2d 1144.

James T. McCormick, Esq., Providence, for Plaintiff.

Christopher R. Bush, Department of Attorney General, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

Kenneth S. Rice (Rice) appeals from a judgment of the Superior Court dismissing his application for postconviction relief. On appeal, Rice challenges the hearing justice's determination that certain actions on the part of his trial counsel did not rise to the level of ineffective assistance, but instead constituted tactical decisions made during trial. This case came before the Supreme Court for oral argument on December 7, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The facts underlying this case are set forth in *State v. Rice*, 755 A.2d 137 (R.I. 2000) (*Rice I*), in which this Court upheld Rice's convictions. In March 1998, a Superior Court jury convicted Rice of all six counts with which he was charged by indictment—three counts of first-degree child molestation sexual assault, one count of second-degree child molestation sexual assault, and two counts of solicitation with the intent to commit a felony. For count 1, first-degree child molestation sexual assault, the trial justice imposed a sentence

of life imprisonment, which was to run consecutively to a previously imposed twelve-year sentence resulting from a probation violation. Rice's convictions under counts 2 and 3, also involving first-degree child molestation sexual assault, resulted in the imposition of concurrent fifty-year sentences. On count 4, second-degree child molestation sexual assault, Rice received a ten-year sentence, to run consecutively to the life sentence imposed for count 1. The trial justice also levied two five-year sentences running concurrently, for Rice's convictions under counts 5 and 6—the solicitation charges. Lastly, the trial justice declared Rice a habitual offender in accordance with G.L.1956 § 12–19–21 [1] and imposed an additional ten-year sentence to run consecutively to those associated with counts 1 through 6. At sentencing, the trial justice also deemed Rice to be ineligible for parole for thirty years.

Following trial, Rice appealed his convictions to this Court. After reviewing the record, we affirmed Rice's conviction on all

counts and denied his appeal in 2000. *See Rice I*, 755 A.2d at 153.

At some point subsequent to sentencing, Rice filed a motion to reduce his sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure—namely, the thirty-year restriction on his eligibility for parole.[2] That motion was denied by a Superior Court hearing justice. In 2002, Rice successfully appealed that denial to this Court in *State v. Rice*, 811 A.2d 1144 (R.I.2002) (*Rice II*)—ultimately, that portion of the judgment of conviction at issue was vacated. In 2007, Rice again filed a Rule 35 motion in regard to the sentence stemming from the 1998 trial, seeking at that time to correct his sentence based on alleged discrepancies between the wording of his judgment of conviction form and the transcript of his sentencing hearing, which motion was denied. Rice unsuccessfully appealed that denial to this Court in *State v. Rice*, 986 A.2d 247 (R.I.2010) (*Rice III*).

In November 2000, following the affirmance of his convictions by this Court in *Rice I*, Rice prepared and filed, *pro se*, a

---

1. General Laws 1956 § 12–19–21, governing the classification of an individual as a "habitual offender," reads in pertinent part as follows:

"(a) If any person who has been previously convicted in this or any other state of two (2) or more felony offenses arising from separate and distinct incidents and sentenced on two (2) or more occasions to serve a term in prison is, after the convictions and sentences, convicted in this state of any offense punished by imprisonment for more than one year, that person shall be deemed a 'habitual criminal.' Upon conviction, the person deemed a habitual criminal shall be punished by imprisonment in the adult correctional institutions for a term not exceeding twenty-five (25) years, in addition to any sentence imposed for the offense of which he or she was last convicted.
"(b) * * * If it appears by a preponderance of the evidence presented that the defendant is a habitual criminal under this section, he or she shall be sentenced by the

court to an additional consecutive term of imprisonment not exceeding twenty-five (25) years; and provided further, that the court shall order the defendant to serve a minimum number of years of the sentence before he or she becomes eligible for parole."

2. Rule 35(a) of the Superior Court Rules of Criminal Procedure reads in pertinent part:

"The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner and it may reduce any sentence when a motion is filed within one hundred and twenty (120) days after the sentence is imposed, or within one hundred and twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment or dismissal of the appeal * * *. * * * The court may reduce a sentence, the execution of which has been suspended, upon revocation of probation."

one-paragraph application for postconviction relief.[3] In April 2004, Rice was appointed counsel, who—after a series of status conferences—filed an amended postconviction-relief application on Rice's behalf on February 23, 2006. In his amended application, Rice asserted that he received ineffective assistance of counsel during his 1998 trial, grounding this contention on several alleged errors on the part of his trial counsel. Rice maintained that trial counsel failed to properly investigate medical opinions in regard to whether a lack of physical evidence indicating prior trauma upon examination of the victim by a nurse practitioner four years subsequent to the sexual assault was consistent with the victim's allegation of painful sexual penetration by Rice. Although trial counsel conferred with a physician as a potential expert witness concerning the lack of clinical evidence of penetration, that physician was not called to testify at trial. Rice also averred that his trial counsel rendered ineffective assistance by calling the state's nurse practitioner (who examined the victim four years following the assault) as a defense witness to impeach the victim because it "opened the door" for the state to elicit on cross-examination prior consistent statements by the victim to the nurse practitioner that would otherwise have been excluded.[4] In a similar vein, Rice alleges that his trial counsel improperly called as a witness an employee of the Department of Children, Youth and Families (DCYF) who took a statement from the victim regarding the sexual assault. Albeit called by trial counsel to discredit the victim, the testimony of the DCYF worker again "opened the door" for the state to elicit otherwise barred corroborating testimony.

In addition to his claim of ineffective assistance of counsel, Rice also set forth a claim in his postconviction-relief application based on newly discovered evidence. Rice contended that the findings in a medical journal article published in 2003—five years after the trial—tended to undermine certain allegations made by the victim.

On July 14, 2006, an evidentiary hearing on Rice's amended postconviction-relief application was held before a Superior Court justice, during which both Rice and his trial attorney testified. While on the stand, Rice's trial counsel described his contact with the potential medical expert prior to the trial and his reasoning for such contact, and he recalled the physician's findings concerning the nurse practitioner's examination of the victim. Referring to correspondence from that physician admitted into evidence at the postconviction-relief hearing, Rice's trial counsel testified that the physician surmised that "[t]here was a 30 to 50 percent chance of having zero findings [of physical trauma], even if [the victim was] raped four years ago." According to Rice's trial counsel, based on that finding, the physician could not provide a medical opinion to a reasonable degree of medical certainty that

---

3. It appears from the record that Rice filed an updated postconviction-relief application in March 2004, again in a *pro se* capacity, setting forth his arguments with accompanying transcript excerpts from his trial. Rice also filed, *pro se*, various motions and supplements in 2004 and 2005, despite having been appointed counsel on April 2, 2004.

4. The record reveals that trial counsel called the nurse practitioner to establish an inconsistency in the victim's testimony—namely, that while the victim alleged at trial that a sexual encounter with Rice involved oral copulation, the victim denied the same to the nurse practitioner. However, this line of questioning by trial counsel on direct examination enabled the state on cross-examination to then elicit from the nurse practitioner that the victim did disclose to her the occurrence of penile/vaginal contact—a statement that corroborated the victim's trial testimony.

would support Rice's defense. Thus, trial counsel considered the physician's opinion to be of "no help," and he subsequently decided not to call him as a defense witness.[5] Trial counsel recalled discussing this recommendation with Rice; and he also recalled that, in that discussion, he "told him that it was his [Rice's] decision." According to trial counsel, Rice agreed with the decision not to call the physician to testify.

While on the stand, Rice's trial counsel was also questioned about his decision to call both the nurse practitioner and the DCYF worker as defense witnesses during trial. Trial counsel recalled that, although both he and Rice "thought [the victim] was pretty effectively impeached," he called the nurse practitioner and DCYF worker to establish further inconsistencies in the victim's testimony. Trial counsel could not, however, recall that the state was able to elicit corroborative testimony from the nurse practitioner on cross-examination. Nor could trial counsel recall whether the state was able to establish consistencies upon cross-examination of the DCYF worker.

Rice's testimony at the evidentiary hearing painted a different picture of his inter-

actions with his trial counsel in preparing for trial. He asserted that he considered the proposed medical testimony to "play a major role" in his defense, and believed that his trial counsel was going to arrange for the physician to "come in on [his] behalf in [his] defense." When asked whether he had discussed with trial counsel "any aspect of [the physician] testifying or not testifying," Rice replied "[o]ther than this letter, no."[6]

On May 31, 2007, the hearing justice rendered a bench decision on Rice's amended application for postconviction relief. Applying the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in assessing Rice's ineffective-assistance-of-counsel claim,[7] and emphasizing that "tactical decisions by trial counsel do not by themselves constitute ineffective assistance," the hearing justice examined each of Rice's allegations of error in turn. In addressing Rice's assertions that his trial counsel (1) failed to properly investigate and "present[ ] medical evidence that a lack of physical injury four years after the alleged offense is evidence that no assault ever occurred" and (2) "failed to consider medical testimony in that regard[,]" the hearing justice noted that trial counsel had

5.  Rice's trial counsel testified that the decision not to use the physician as an expert witness also stemmed from the trial justice's evidentiary ruling prior to trial that prevented the nurse practitioner from testifying that an absence of clinical evidence of trauma to the victim four years after the sexual assault did not necessarily indicate that the assault did not occur. Because the nurse practitioner could not testify to that effect, using an expert to counter that opinion was not necessary. Moreover, the physician essentially agreed with the nurse practitioner's opinion.

6.  Rice maintained that the only communications he received from his trial counsel regarding the potential medical expert were a letter from trial counsel to Rice dated October 17, 1997, and a letter from trial counsel to the

physician dated February 1998 and copied to Rice. Both letters were admitted at the hearing.

7.  This Court implements the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), when assessing whether an applicant should be granted relief from a conviction because of ineffective assistance of counsel. *See Page v. State*, 995 A.2d 934, 942 (R.I.2010). "To satisfy this two-part inquiry, an applicant must prove that: '(1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.'" *Brown v. State*, 32 A.3d 901, 904 n. 3 (R.I.2011) (quoting *Torres v. State*, 19 A.3d 71, 76 (R.I.2011)).

indeed investigated "the medical testimony relating to sexual penetration presented by the [s]tate." The hearing justice found that trial counsel had contacted the physician for that purpose and that, "although a consultation with [the] potential expert was obtained, [trial] counsel made a conscious strategic decision not to offer [the physician] as a defense expert and discussed that decision with Mr. Rice." Finding trial counsel's testimony at the evidentiary hearing to be more credible than Rice's, the hearing justice determined that "Rice was afforded full disclosure of the decision that the [physician] not be called and the reasons why [trial] counsel believed that the [physician's] testimony would not be helpful to the defense." Finding the evidence presented at the hearing to have belied Rice's contentions that trial counsel failed to investigate and present certain medical evidence, the hearing justice concluded that trial counsel's efforts did not rise to the level of ineffective assistance of counsel in that regard.

The hearing justice next considered whether trial counsel's use of the nurse practitioner and the DCYF worker as defense witnesses—which Rice asserted damaged his defense rather than helped it—constituted ineffective assistance. After reviewing the record, he determined that trial counsel did in fact call those witnesses to establish an inconsistency in the victim's out-of-court statements and that, despite the resulting testimony by

both witnesses that ultimately corroborated part of the victim's story, he did not consider this decision by counsel as "unreasonable or rising to the level of ineffective assistance of counsel." The hearing justice characterized trial counsel's approach as tactical and emphasized that "tactical decisions, even if they appear unwise in hindsight, do not constitute constitutionally defective representation under the reasonably competent assistance standard of our [state] law."

Lastly, the hearing justice reviewed Rice's claim of newly discovered evidence. Employing the standard used by this Court in assessing such claims,[8] he determined that Rice failed to make a satisfactory showing that the alleged newly discovered evidence—the 2003 medical journal article—was not discoverable prior to trial. Finding Rice's failure to sustain his burden in meeting this initial threshold as "fatal to [that] ground for postconviction-relief," the hearing justice ultimately deemed all of Rice's contentions as without merit and denied his application for postconviction relief in its entirety. Rice timely filed a notice of appeal from the hearing justice's decision on May 31, 2007.[9]

## II

### Issues on Appeal

On appeal, Rice contends that the hearing justice erred in denying his application

---

8. The first part of this analysis requires that a postconviction-relief applicant "establish that (a) the evidence is newly discovered or available only since trial; (b) the evidence was not discoverable prior to trial despite the exercise of due diligence; (c) the evidence is not merely cumulative or impeaching but rather is material to the issue upon which it is admissible; and (d) the evidence is of a kind which would probably change the verdict at trial." *Reise v. State*, 913 A.2d 1052, 1056 (R.I.2007) (citing *Bleau v. Wall*, 808 A.2d 637, 642 (R.I. 2002)). Should an applicant meet this pre-

liminary threshold, "the hearing justice must then determine, in his or her discretion, whether or not the newly discovered evidence is sufficiently credible to warrant relief." *Id.* (citing *Bleau*, 808 A.2d at 642; *State v. Hazard*, 797 A.2d 448, 464 (R.I.2002)).

9. It appears that final judgment was not entered in this matter until February 27, 2009. Rice's appeal, albeit filed prematurely, is considered valid by this Court. *See Chapdelaine v. State*, 32 A.3d 937, 941 n. 1 (R.I.2011).

for postconviction relief by deeming his trial counsel's testimony during the evidentiary hearing as credible and by characterizing counsel's actions as tactical decisions not unreasonable in light of the circumstances. Rice emphasizes that during trial, the victim had been "thoroughly impeached," and in his view, "the incremental benefit" of establishing additional inconsistencies in the victim's testimony by way of examining the nurse practitioner and the DCYF worker thus was "extravagantly outweighed by the prejudice" caused by the prior consistent statements of the victim allowed into evidence as a result. Rice maintains that such deficiencies on the part of his trial counsel resulted in an unfair proceeding that led to a confidence-lacking verdict. While not comprehensively briefed on appeal, Rice does appear to cursorily challenge the hearing justice's findings as to trial counsel's efforts with respect to securing a potential medical expert.[10] On appeal, Rice does not raise the hearing justice's denial of his claim of newly discovered evidence.

### III

### Standard of Review

The postconviction remedy, set forth in G.L.1956 § 10–9.1–1, provides that "one who has been convicted of a crime may seek collateral review of that conviction based on alleged violations of his or her constitutional rights." *Lynch v. State,* 13 A.3d 603, 605 (R.I.2011). Accordingly, in all criminal prosecutions, one who alleges the infringement of his or her constitutional Sixth Amendment right to the assistance of counsel may avail his or herself of the postconviction-relief process. *See*

Brown v. State, 964 A.2d 516, 526 (R.I. 2009).

An applicant for such relief "bears the burden of proving, by a preponderance of the evidence, that such relief is warranted" in his or her case. *Mattatall v. State,* 947 A.2d 896, 901 n. 7 (R.I.2008); *see also State v. Laurence,* 18 A.3d 512, 521 (R.I.2011). "In reviewing the denial of postconviction relief, this Court affords great deference to the hearing justice's findings of fact and will not disturb his or her ruling 'absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence.'" *Brown v. State,* 32 A.3d 901, 907–08 (R.I.2011) (quoting *Page v. State,* 995 A.2d 934, 942 (R.I.2010)). However, "[w]e review *de novo* 'any post-conviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.'" *Cote v. State,* 994 A.2d 59, 63 (R.I.2010) (quoting *Bleau v. Wall,* 808 A.2d 637, 641–42 (R.I.2002)). Nevertheless, "[e]ven when the *de novo* standard is applied to issues of constitutional dimension, we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference in conducting our review." *Laurence,* 18 A.3d at 521 (quoting *Thornton v. State,* 948 A.2d 312, 316 (R.I.2008)).

### IV

### Discussion

In this case, Rice's postconviction-relief endeavors are rooted in what he alleges to be the ineffective assistance of his trial counsel. In so alleging, Rice is

---

10. During oral argument on this matter, the state alluded that the medical expert issue may indeed have been waived by Rice based on a failure to properly brief the issue on appeal. We note that this Court will deem as waived issues that the appellant fails to brief, despite being addressed at oral argument. *Roe v. Gelineau,* 794 A.2d 476, 482 n. 6 (R.I. 2002); *see also Stebbins v. Wells,* 818 A.2d 711, 720 (R.I.2003).

saddled with a "heavy burden," in that there exists "a strong presumption [recognized by this Court] that an attorney's performance falls within the range of reasonable professional assistance and sound strategy * * *." *Ouimette v. State*, 785 A.2d 1132, 1138–39 (R.I.2001). As noted, this Court employs the standard set forth in *Strickland* when assessing claims of ineffective assistance of counsel. *See Chapdelaine v. State*, 32 A.3d 937, 941 (R.I. 2011). This two-tier test requires that the defendant show "(1) that the counsel's performance was so deficient and the errors so serious that they violate a defendant's Sixth Amendment guaranty of counsel; and, (2) that this deficient performance prejudiced his or her defense and deprived the defendant of his or her right to a fair trial." *Pierce v. Wall*, 941 A.2d 189, 193 (R.I.2008) (quoting *Ouimette*, 785 A.2d at 1139). To sufficiently show a deficiency under the first criterion, the defendant must demonstrate "that counsel's representation fell below an objective standard of reasonableness." *Rodriguez v. State*, 941 A.2d 158, 162 (R.I.2008) (quoting *Brennan v. Vose*, 764 A.2d 168, 171 (R.I. 2001)). The second condition requires that the defendant provide proof of "prejudice emanating from the attorney's deficient performance such as 'to amount to a deprivation of the [defendant's] right to a fair trial,'" *id.* (quoting *Brennan*, 764 A.2d at 171), and is satisfied when he or she shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

▪▪▪ Affording the requisite deference to the hearing justice's findings of historical fact, we agree with his determination that Rice's grounds upon which he based his claim of ineffective assistance did not constitute constitutionally deficient representation on the part of his trial counsel. The testimony of Rice's trial counsel at the evidentiary hearing—which testimony the hearing justice found to be more credible[11] than Rice's—indicated that his decisions were indeed tactical and not unreasonable in light of the circumstances. Trial counsel testified that he communicated with Rice prior to and during the trial as to the strategic components of his defense, particularly in regard to the decision to not call the physician as a potential medical expert. The evidence elicited at the evidentiary hearing provided a sound basis for trial counsel's decision not to use the physician's opinion—namely, that the physician essentially agreed with the state's witness (the nurse practitioner) and that, ultimately, a pretrial evidentiary ruling in favor of the defense negated the need for such a medical opinion. This Court "will not meticulously scrutinize an attorney's reasoned judgment or strategic maneuver in the context of a claim of ineffective assistance of counsel." *Brennan*, 764 A.2d at 173; *see also Rodriguez*, 941 A.2d at 162. Therefore, in light of trial counsel's strategic reasoning for not

---

11. We note that "[o]n review of an application for post-conviction relief we are bound by the trial justice's determination concerning credibility." *State v. Feng*, 421 A.2d 1258, 1273 (R.I.1980). This Court will not disturb such credibility determinations by a postconviction-relief hearing justice unless the defendant "demonstrate[s] by a preponderance of the evidence that the [hearing] justice was clearly wrong." *Fontaine v. State*, 602 A.2d 521, 526 (R.I.1992). In his brief, Rice appears to challenge the credibility determinations of the hearing justice based on trial counsel's inability, at the evidentiary hearing, to "recall" certain witness testimony from the 1998 trial. We find, however, that Rice has failed to show that the hearing justice's credibility determinations were clearly wrong. Thus, we will not here serve as "the arbiter of credibility" as "that remains a determination that is expressly entrusted to the [hearing] justice." *Id.*

procuring a medical expert, and Rice being apprised of such, we consider that decision to be tactical in nature and not objectively unreasonable.

 Moreover, "[i]t is well established that tactical decisions by trial counsel, even if ill-advised, do not by themselves constitute ineffective assistance of counsel." *Vorgvongsa v. State*, 785 A.2d 542, 549 (R.I.2001) (citing *Toole v. State*, 748 A.2d 806, 809 (R.I.2000)); *see also Alessio v. State*, 924 A.2d 751, 754 (R.I. 2007). In that regard, we likewise find trial counsel's tactical use of the nurse practitioner and DCYF worker as defense witnesses not to rise to the level of ineffective assistance, notwithstanding the resulting corroborative testimony from both witnesses achieved by the state on cross-examination. At trial, counsel sought to impeach the victim by shedding light on prior inconsistent out-of-court statements she made to both these witnesses. These were fathomably reasonable tactical choices for trial counsel to make in light of the evidence that had been presented against Rice during his trial.

We welcome this opportunity to reemphasize that the lens under which this Court examines constitutionally defective representation under *Strickland* is one of reasonable competency of assistance. "Under [this] reasonably competent assistance standard, 'effective representation is not the same as errorless representation.'" *State v. D'Alo*, 477 A.2d 89, 92 (R.I.1984) (quoting *United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir.1978)). "Thus, a choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally deficient representation under th[is] * * * standard." *Id.* (quoting *Bosch*, 584 F.2d at 1121); *see also Bustamante v. Wall*, 866 A.2d 516, 523 (R.I. 2005).

Accordingly, after conducting a *de novo* review of the evidence in the record before this Court, we hold that Rice has failed to meet his burden in seeking to prove his ineffective-assistance-of-counsel claim in accordance with the test under *Strickland.* The tactical decisions that Rice here challenges were reasonably competent and did not rise to a level of constitutionally inadequate performance by trial counsel. *See Toole*, 748 A.2d at 809. Hence, the hearing justice did not overlook or misconceive material evidence, nor did he clearly err in his denial of Rice's postconviction-relief application. *See Page*, 995 A.2d at 942.

## V

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.