Supreme Court
No. 2011-322-Appeal.

Firlando Rivera            :

v.                   :

State of Rhode Island.       :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Indeglia, for the Court.**  Firlando Rivera (Rivera or applicant) appeals from a Superior Court judgment denying his application for postconviction relief.  On appeal, Rivera contends that the hearing justice erred in rejecting his claim of ineffective assistance of counsel. This case came before the Supreme Court for oral argument on October 23, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

## A

## Trial and Appeal

The facts underlying this case are set forth in State v. Rivera, 839 A.2d 497 (R.I. 2003), in which this Court upheld Rivera's judgments of conviction.  In short, in the early morning hours of November 23, 1997, Rivera and three acquaintances—Hector Vasquez, John Muniz,

and Dwight Withee—became involved in a confrontation with Edward "Chipper" Wilson IV and Robert K. Rhoades at the Weiner Palace in Woonsocket.[1] See Rivera, 839 A.2d at 499. What began as a verbal altercation escalated into physical violence that ultimately led to Wilson's death after he was shot in the head. Id.

On October 19, 1999, a Superior Court jury convicted Rivera of first-degree murder and three firearms charges. The trial justice denied Rivera's motion for a new trial on October 27, 1999. Several months later, on February 3, 2000, the trial justice sentenced Rivera to a mandatory sentence of life imprisonment for murder. He also imposed a ten-year suspended sentence and a ten-year probationary term for one of the firearms charges; for each of the other two firearms charges, he imposed a ten-year jail term. The sentences on the firearms charges were to run concurrently with the life sentence. The trial justice also declared Rivera to be a habitual offender in accordance with G.L. 1956 § 12-19-21. Pursuant to that statute, he sentenced Rivera to an additional twenty years in jail for which he would be ineligible to seek parole; this sentence was to run consecutively to the life sentence. Judgment of conviction was entered thereafter.

Rivera then timely appealed his convictions to this Court. After reviewing the record, we affirmed his convictions on all counts and denied his appeal on November 19, 2003. See Rivera, 839 A.2d at 504.

---

[1] Although our opinion did not identify Rivera's three acquaintances, those men were identified during the postconviction-relief hearing. Hector Vasquez's name is spelled differently at different points in the record.

# B

## Postconviction-Relief Proceedings

On February 27, 2004, Rivera filed a pro se application for postconviction relief. Rivera was appointed counsel about one month later. On March 29, 2006, counsel filed a verified complaint in support of Rivera's application for postconviction relief. Unlike Rivera's original application, which contained allegations of a general nature, the verified complaint contained seven specific grounds as to which he alleged ineffective assistance of counsel. Those grounds were as follows: (1) attorney conflict of interest; (2) failure to raise a third-party perpetrator defense; (3) failure to pursue a motion to suppress; (4) failure to investigate or conduct pretrial preparation; (5) failure to conduct pretrial investigation; (6) failure to raise a motion for a speedy trial; and (7) failure to preserve issues at trial. In a later filing, Rivera abandoned several of these arguments, stating that he intended to press only four grounds of alleged ineffective assistance of counsel: that his attorneys were conflicted in their representation of him; that they failed to adequately investigate and prepare for trial; that they failed to pursue a motion to suppress; and that they failed to mount a third-party perpetrator defense.

An evidentiary hearing on Rivera's application was held on February 10 and 11, 2011.[2] The justice who presided over that hearing had also presided over Rivera's jury trial in 1999. Three witnesses testified at the hearing: Matthew Smith, one of the two attorneys who represented Rivera at trial; John Verdecchia, Smith's co-counsel; and Dwight Withee, an

---

[2] The record offers little explanation for the extraordinary delay in this case. In a letter dated September 7, 2010, Rivera's postconviction counsel explained to the hearing justice that "[m]uch of that [delay] has to do with the fact that * * * [Rivera's] strategy has changed several times." We note that the state did not file a memorandum in response to Rivera's application for postconviction relief until November 14, 2008.

- 3 -

acquaintance of Rivera's who was with him at the Weiner Palace at the time of the shooting. Below, we summarize the relevant evidence adduced at the hearing.

**i**

**Testimony Concerning Conflict of Interest**

Rivera's primary argument at the postconviction-relief hearing was that his trial attorneys had represented him while laboring under a conflict of interest. This conflict, Rivera argued, stemmed from Smith's and Verdecchia's representation of Hector Vasquez. Vasquez was an acquaintance of Rivera's and was with him at the Weiner Palace on the night of the murder. Rivera contended that an "inherent" conflict of interest resulted from Smith's and Verdecchia's representation of Vasquez during a key period of their representation of Rivera.

Rivera's postconviction counsel elicited testimony from both Smith and Verdecchia about this purported conflict of interest. Smith testified that he and Verdecchia jointly represented Rivera in connection with the charges that stemmed from Wilson's murder.[3] Although Smith did not open a file on Rivera until January 7, 1998, he stated that he and Verdecchia represented Rivera as of December 1997, when Rivera was presented in the Superior Court as a violator of a previously imposed probation.

Smith explained that in late 1997 he and Verdecchia also represented Vasquez in connection with federal narcotics charges that were unrelated to Wilson's murder. Smith's representation of Vasquez on these charges concluded when Vasquez entered a plea in federal court on June 19, 1998. Smith confirmed on cross-examination that Rivera's murder charge and Vasquez's narcotics charges were "entirely separate and distinct" and that those two cases had "absolutely nothing to do with [each] other."

---

[3] Although Smith and Verdecchia were not formally associated in the practice of law, both of them testified that they worked together on cases from time to time.

Smith testified that shortly after the murder occurred Verdecchia brought Vasquez to the Woonsocket police station to give a statement in connection with the investigation. Vasquez's statement was admitted as a full exhibit at the postconviction-relief hearing. In that statement, Vasquez told the police (1) that he was in the restroom at the Weiner Palace and that he came out when he heard shots; (2) that he did not see Rivera fight with Wilson; and (3) that he did not see Rivera shoot Wilson. Vasquez told the police that, before going to the station to give his statement, he had spoken with Rivera by telephone. When an officer asked Vasquez whether Rivera had told him "what he [Rivera] allegedly did," Vasquez replied that Rivera had not done so. In addition, Vasquez told the police that when he advised Rivera of his intent to give a statement, Rivera told him: "That's your decision."

Smith testified that although he "would like to think" that he discussed with Rivera the issue of a possible conflict concerning the concurrent representation of Vasquez, he was "not prepared to say under oath" that he had such a conversation. Smith did recall that he and Verdecchia had Rivera "sign something related to a potential conflict of interest." Smith was "certain" that he had not brought this issue to the court's attention before trial. Smith averred, however, that Rivera's family—and perhaps Rivera himself—knew that Vasquez would be giving a statement and that Verdecchia would be present.

Verdecchia testified that he, too, was representing Vasquez when Vasquez spoke with police after the murder.[4] Verdecchia did not specify exactly what his representation of Vasquez on November 23, 1997, entailed; he testified only that Vasquez had contacted him and had come

---

[4] Although the record is somewhat unclear on this subject, Verdecchia testified that he had previously represented Vasquez when he pled nolo contendere to a charge of simple assault in October 1997. Vasquez was later presented as a violator in December 1997, and several new charges were also filed against him. The new charges, which included narcotics offenses, were ultimately prosecuted in federal court. As noted above, Smith represented Vasquez on those charges, which were resolved through a plea agreement in June 1998.

to his office. Verdecchia explained that he felt Rivera's defense would be bolstered by Vasquez's statement to the police. During cross-examination, he elaborated on this subject:

> " * * * [T]he main purpose for bringing Mr. Vasquez to the police station to give a statement was not because the Woonsocket Police considered him a viable suspect. My impression, then, as it is now, is that the Woonsocket Police considered him to be a percipient witness because he was at the site, at the scene on the night in question. Now, after speaking with Mr. Vasquez about the events on that night, we decided—and this was a collective agreement— that we would bring [Vasquez] up to the Woonsocket Police station * * * in order to give testimony, which we felt was actually beneficial to Mr. Rivera."

Verdecchia did not recall having Rivera execute a written waiver of any conflict that might exist in connection with his and Smith's representation of Vasquez. Like Smith, Verdecchia did not disclose to the trial court any potential conflict that might have stemmed from his representation of Rivera and Vasquez because "[he] never felt there was a conflict." When asked on cross-examination whether he "in any way [felt] any allegiance to Mr. Vasquez that prevented [him] from effectively representing [Rivera]," Verdecchia stated: "Absolutely not."

**ii**

**Testimony Concerning Strategic Decisions**

Rivera also sought to prove that his attorneys had erred in making two major strategic decisions: abandoning a motion to suppress evidence of photo arrays, and deciding not to mount a third-party perpetrator defense. Smith and Verdecchia explained their reasoning underlying both these decisions. As for their decision not to pursue a motion to suppress evidence, Smith and Verdecchia both testified that they felt the motion would be futile for two reasons. First, they agreed that there was nothing inherently suggestive about the photo arrays that would provide grounds for a motion to suppress. Second, they believed it would be better to highlight

- 6 -

some irregularities with the photo arrays through cross-examination at trial rather than "tip[   ] [their] hand" at a suppression hearing.  Verdecchia elaborated on this decision as follows:

> " * * * [W]e initially filed the motion to suppress out of an abundance of caution and, at the time we filed it, thought that, perhaps, there might be a ground to suppress the identification. But, after doing more detailed review, we felt that [the] motion would in all likelihood fail, because although there were some irregularities in the methodology that was employed by the Woonsocket Police Department, * * *, we felt that would go to the weight as opposed to the admissibility of the * * * photo pack[s] * * *.
> " * * * Had we pursued what ultimately would have been an unsuccessful suppression motion, we essentially would have tipped our hand, not only to * * * the prosecutor, but, more importantly, to the police officers who would be testifying, not only at the suppression hearing, but then at the trial."

As for their decision not to mount a third-party perpetrator defense, both attorneys testified that this defense was not supported by either the discovery or their own investigation of the case.  Smith and Verdecchia both noted that Rivera was the only person who had been identified as the shooter, and both attorneys testified that Rivera did not suggest to them that another person had been the shooter.  On cross-examination, Verdecchia confirmed that "[Rivera's] case was reviewed in intimate detail, and also in consultation with [Rivera], and, based on those two factors, we decided to proceed with what we thought was the most effective defense * * *."  In response to an inquiry from the hearing justice, Verdecchia testified that he and Smith had discussed strategic decisions with Rivera and that Rivera "was inclined to agree [with those decisions] after [they were] explained to him."

Withee also provided testimony relating to Rivera's claim that his attorneys should have pursued a third-party perpetrator defense.  He testified that he and Vasquez were both at the Weiner Palace on the night Wilson was murdered.  Withee either saw or heard the altercation

- 7 -

that led to Wilson's death.[5]  He then "decided to get out of the area * * *."  As he left, he heard gunshots; Withee then ran away from the scene.  He testified that Vasquez was by his side at this point and that there was no way that Vasquez could have fired the bullet that killed Wilson.

### iii

### The Hearing Justice's Decision

After both parties had rested, the hearing justice rendered a bench decision in which he denied Rivera's application for postconviction relief.  The hearing justice addressed and, in turn, rejected each of Rivera's arguments underlying his allegation of ineffective assistance of counsel.  As for Rivera's contention that his trial counsel were ineffective in failing to pursue a motion to suppress, the hearing justice noted that there was "nothing suggestive" about the photo arrays that were introduced into evidence at trial.  Crediting Smith's and Verdecchia's testimony, the hearing justice concluded that trial counsel had made a prudent tactical decision not to pursue the motion to suppress.  He noted that Rivera's attorneys were "rather successful[ ]" in exposing irregularities with the photo arrays at trial and that the Woonsocket police probably were "somewhat embarrassed" as a result.

As to Rivera's assertion that his attorneys were ineffective in failing to pursue a third-party perpetrator defense, the hearing justice stated that Smith and Verdecchia "rightly decided that it was not a viable theory of defense."  The hearing justice noted that it was Rivera, not Vasquez, who had a physical altercation with Wilson.  He also found that no one ever identified Vasquez as the person who shot the victim and that Rivera was the only person who was so identified.  Under these facts, the hearing justice characterized Smith's and Verdecchia's decision concerning a third-party perpetrator defense as "sound."

---

[5] Withee provided conflicting testimony as to whether he saw or merely heard the altercation.

Finally, as to Rivera's argument that his attorneys were ineffective because they were conflicted in their representation of him, the hearing justice found that Rivera's attorneys neither struggled to serve two clients nor actively represented conflicting interests. Concluding his remarks from the bench, the hearing justice observed that Rivera's conviction was not the result of his attorneys' performance, but rather of the weight of the credible evidence against him. The hearing justice accordingly denied Rivera's application for postconviction relief, and an order to that effect was entered on February 18, 2011. Thereafter, Rivera timely appealed to this Court.

## II

### Issues on Appeal

On appeal, Rivera contends that the hearing justice erred in rejecting his argument that he was denied the effective assistance of counsel. Reiterating the arguments his counsel advanced at the postconviction-relief hearing, Rivera argues that he was deprived of his constitutional right to the effective assistance of counsel because his trial attorneys had (1) represented him while laboring under a conflict of interest; (2) failed to pursue a motion to suppress; and (3) failed to mount a third-party perpetrator defense.

In his verified complaint supporting his application, Rivera set forth several additional grounds of alleged ineffective assistance of counsel. Only the three grounds noted above have been properly preserved for our review, and we deem the following grounds of appeal to be waived: (1) the adequacy of his attorneys' pretrial investigation and preparation; (2) their failure to move for a speedy trial; and (3) their failure to preserve certain issues for appeal.[6] See Wilkinson v. State Crime Laboratory Commission, 788 A.2d 1129, 1131 n.1 (R.I. 2002)

---

[6] At the postconviction-relief hearing, Rivera adduced testimony relevant to the adequacy of his attorneys' pretrial investigation and preparation. He did not, however, raise this issue during closing arguments at the hearing, and he did not object when the hearing justice did not discuss this issue when he rendered his bench decision. Accordingly, we deem that issue to be waived.

("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.").

## III

## Standard of Review

Rhode Island's statutory postconviction remedy is set forth in G.L. 1956 chapter 9.1 of title 10. Section 10-9.1-1 enumerates the circumstances in which "one who has been convicted of a crime may seek collateral review of that conviction * * *." See Anderson v. State, 45 A.3d 594, 601 (R.I. 2012) (quoting Rice v. State, 38 A.3d 9, 16 (R.I. 2012)). In reviewing an application for postconviction relief, "[t]his Court will not impinge upon the fact-finding function of a hearing justice * * * 'absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence in arriving at those findings.'" Id. (quoting Chapdelaine v. State, 32 A.3d 937, 941 (R.I. 2011)).

We employ a de novo standard of review with regard to "questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights * * *." Anderson, 45 A.3d at 601 (quoting State v. Laurence, 18 A.3d 512, 521 (R.I. 2011)). Even when applying the de novo standard of review to such issues, however, "we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference in conducting our review." Id. (quoting Rice, 38 A.3d at 16). "An applicant who files an application for postconviction relief bears the burden of proving, by a preponderance of the evidence, that such relief is warranted." Id. (quoting Mattatall v. State, 947 A.2d 896, 901 n.7 (R.I. 2008)).

## IV

### Discussion

Criminal defendants have the right to the effective assistance of counsel under both the United States Constitution and the Rhode Island Constitution. See State v. Laurence, 848 A.2d 238, 252 (R.I. 2004). When evaluating claims of ineffective assistance of counsel, this Court employs the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). See Chapdelaine, 32 A.3d at 941. In Pelletier v. State, 966 A.2d 1237 (R.I. 2009), we summarized that test as follows:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Pelletier, 966 A.2d at 1241 (quoting Strickland, 466 U.S. at 687).

As we have previously recognized, the United States Supreme Court has "cautioned that the Strickland standard should not be applied overbroadly * * *." Larngar v. Wall, 918 A.2d 850, 864 (R.I. 2007) (citing Nix v. Whiteside, 475 U.S. 157, 165 (1986)). "[W]hen determining whether an attorney's conduct amount[s] to ineffective assistance of counsel, 'a court must be careful not to narrow the wide range of conduct acceptable * * * so restrictively as to constitutionalize particular standards of professional conduct * * *.'" Id. (quoting Nix, 475 U.S. at 165). There is "a strong presumption * * * that an attorney's performance falls within the range of reasonable professional assistance and sound strategy * * *." Rice, 38 A.3d at 17 (quoting Ouimette v. State, 785 A.2d 1132, 1138-39 (R.I. 2001)). Keeping this presumption in mind, we now address each of Rivera's purported grounds of ineffective assistance of counsel.

- 11 -

## A

### Conflict of Interest

A defendant cannot prevail on an allegation of ineffective assistance of counsel merely by showing that his attorney had a potential conflict of interest during the representation. Chapdelaine, 32 A.3d at 946. "[I]n order to demonstrate a violation of his [or her] Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his [or her] lawyer's performance." State v. Pineda, 13 A.3d 623, 636 (R.I. 2011) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). The defendant must show "that the attorney 'struggle[d] to serve two masters' meaning that '[his or her] actions [or inactions] were motivated by divided loyalties' and 'lacked a sound strategic basis.'" Id. at 637 (quoting Simpson v. State, 769 A.2d 1257, 1267 (R.I. 2001)). In addition, the defendant must establish that his or her attorney's actual conflict of interest harmed or impaired the defense, "although 'prejudice' need not be demonstrated." Id. (quoting Simpson, 769 A.2d at 1267).

Here, the hearing justice found that neither Smith nor Verdecchia "struggle[d] to serve two clients" or "actively represent[ed] conflicting interests." He noted that "[a]ny prior representation of Vazquez [sic] had concluded * * * long before [Rivera's] trial, in excess of a year." Furthermore, the hearing justice observed that "Hector Vasquez was never a viable target to assign guilt in this case as a so-called third-party culprit * * *." Furthermore, as we conclude in part IV-B, infra, Smith's and Verdecchia's actions had a sound strategic basis. It is significant that Vasquez, in his statement to the police, indicated that he did not see Rivera shoot Wilson. This suggests that Vasquez was an ally of Rivera's rather than a potential source of conflict.

Our precedent requires us to presume that Smith and Verdecchia were capable of correctly analyzing whether a conflict might result from their representation of both Rivera and

Vasquez. See Rice, 38 A.3d at 17. Affording the hearing justice's findings deference, as we must, we cannot say that he erred in concluding that Rivera had not carried his burden of proof in this regard.

## B

### Tactical Decisions

Rivera also contends that his attorneys were ineffective in failing to pursue a motion to suppress evidence and in failing to mount a third-party perpetrator defense. Both of these alleged grounds of ineffective assistance of counsel center on tactical decisions made by Smith and Verdecchia. "[I]t is well established that tactical decisions by trial counsel, even if ill-advised, do not by themselves constitute ineffective assistance of counsel." Rice, 38 A.3d at 18 (quoting Vorgvongsa v. State, 785 A.2d 542, 549 (R.I. 2001)). "This Court 'will not meticulously scrutinize an attorney's reasoned judgment or strategic maneuver in the context of a claim of ineffective assistance of counsel.'" Id. at 17 (quoting Brennan v. Vose, 764 A.2d 168, 173 (R.I. 2001)).

Mindful of the deference we must afford to the hearing justice's findings of historical fact, we conclude that neither of these tactical decisions made by trial counsel constituted constitutionally deficient representation. First, concerning the motion to suppress, we discern no error in the hearing justice's finding that there was "nothing suggestive" about the photo arrays. Furthermore, the hearing justice credited the testimony of Smith and Verdecchia, who explained that they had made a strategic choice to expose irregularities with the photo arrays as they were presented at trial rather than at a suppression hearing. The hearing justice found that "the first prong of Strickland clearly [was] not violated, and there [had] been an utter failure to carry the burden of proof with regard to that claim." We agree, and therefore hold that Rivera's attorneys

- 13 -

did not render ineffective assistance of counsel in choosing not to pursue a motion to suppress evidence.

Similarly, we must defer to the hearing justice's findings of historical fact regarding trial counsels' decision not to mount a third-party perpetrator defense. In the context of an allegation of ineffective assistance of counsel, the issue is not whether the trial justice properly admitted or excluded evidence supporting a third-party perpetrator defense, but whether trial counsel should have pursued such a defense.[7] Although this Court has previously considered on direct appeal whether a trial justice properly excluded evidence relating to a third-party perpetrator defense, we have never before considered on collateral review whether an attorney's failure to mount a third-party perpetrator defense deprived a defendant of his or her right to the effective assistance of counsel. We are guided in our resolution of this issue by Bryant v. Commissioner of Correction, 964 A.2d 1186 (Conn. 2009). In that case, the Connecticut Supreme Court held that "[i]t is not ineffective assistance of counsel * * * to decline to pursue a third party culpability defense when there is insufficient evidence to support that defense." Id. at 1195. See also Brown v. State, 32 A.3d 901, 913 n.24 (R.I. 2011) (no claim of ineffective assistance of counsel could lie where counsel failed to raise a meritless defense).

Here, both attorneys testified—and the hearing justice agreed—that a third-party perpetrator defense was not supported by either discovery or their own investigation of the case. The hearing justice found that "[a]t best, all [Smith and Verdecchia] had with respect to Hector

---

[7] As the hearing justice noted, our precedent requires a defendant who wishes to present a defense that implicates a third party to make a "reasonably specific" offer of proof. State v. Gomes, 881 A.2d 97, 111 (R.I. 2005). Such an offer of proof must include "evidence of another person's motive to commit the crime with which a defendant is charged * * * in conjunction with other evidence tending to show the third person's opportunity to commit the crime and a proximate connection between that person and the actual commission of the crime." Id. at 111 (quoting State v. Gazerro, 420 A.2d 816, 825 (R.I 1980)).

- 14 -

Vasquez was his mere presence. * * * [T]hat, of course, was insufficient to mount [a] third-party culprit defense." He also found that "Rivera himself * * * never even suggested that Vazquez [sic] should be blamed for [the murder]." We discern no error with the hearing justice's findings on this issue, and therefore hold that Rivera's attorneys did not render ineffective assistance of counsel by choosing not to mount a third-party perpetrator defense.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the record in this case.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   Firlando Rivera v. State of Rhode Island.

**CASE NO:**   No. 2011-322-Appeal.
(PM 04-1056)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   January 14, 2013

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**   Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

For Applicant:  Richard K. Corley, Esq.

For State of Rhode Island:  Aaron L. Weisman
Department of Attorney General