**Randy ANDERSON**

v.

**STATE of Rhode Island.**

**No. 2010–218–Appeal.**

Supreme Court of Rhode Island.

June 27, 2012.

See also 755 A.2d 130, 878 A.2d 1049, and
2006 WL 1451555.

Catherine Gibran, Office of the Public Defender, Providence, for Applicant.

Virginia M. McGinn, Department of Attorney General, Providence, for State.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

Randy Anderson (Anderson or applicant) appeals from a judgment of the Superior Court dismissing his application for postconviction relief. On appeal, Anderson contends that the hearing justice erred by (1) deeming his claim of prosecutorial misconduct to be procedurally barred; (2) finding no discovery violation on the part of the state for failing to produce certain medical records; and (3) determining that the medical records would have been "of little or no value to the factfinder in the context of [Anderson's] trial." This case came before the Supreme Court for oral argument on January 24, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument.[1] For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

I

## Facts and Travel

In 1981, Anderson pled *nolo contendere* to charges of robbery, breaking and entering, and assault on a person over the age of sixty in Superior Court case number W1/81–138A, for which he was sentenced to thirty years, twelve years to serve and eighteen years suspended, with probation. Following his release from incarceration, Anderson was arrested and charged with first-degree child molestation stemming from incidents alleged to have occurred in February and March 1995.[2] As a result of this arrest, Anderson was presented in May 1995 as a purported violator of his probation imposed in the 1981 case. Over a three-day violation hearing held in June 1995, the complaining witness testified to three incidents of alleged sexual molestation. During the hearing, the prosecutor, in a sidebar discussion that was on the record, informed the hearing justice and defense counsel that the complaining witness had just informed the state that "she [underwent] a physical exam" that produced "no evidence of scarring or damage to the areas that the [s]tate [alleged] there was a criminal offense."[3] The prosecutor explained that he did not have the reports, given the recentness of the complaining witness's disclosure.[4] After that hearing, Anderson was found to be a violator of his probation, which adjudication was upheld by this Court in *State v. Anderson*, 705 A.2d 996 (R.I.1997) (mem.).

1. We note that, at the conclusion of oral argument on this matter, Anderson's counsel requested that his appeal be assigned for full argument and briefing.

2. Ultimately, Anderson was indicted on two counts of first-degree child molestation based on allegations of forced fellatio and digital penetration.

3. The record reveals that the medical examination at issue was completed on June 15,

1995, at Women & Infants Hospital, three to four months after the time period during which the complaining witness alleged that Anderson had molested her.

4. It is the state's alleged failure to disclose to Anderson, prior to trial, the medical records referred to during the sidebar that forms the foundation of this appeal.

In October 1998, following a Superior Court jury trial on the underlying first-degree child molestation charges, Anderson was convicted on one count of fellatio and acquitted on one count involving digital penetration. Anderson moved for a new trial on his conviction, which was denied on October 30, 1998. Thereafter, he was sentenced to fifty years, thirty years to serve and twenty years suspended. He also received an additional ten-year sentence upon being adjudicated as a habitual offender pursuant to G.L.1956 § 12–19–21. This Court upheld Anderson's conviction on June 8, 2000, in *State v. Anderson*, 752 A.2d 946 (R.I.2000).

Soon after this Court affirmed his conviction, Anderson petitioned the Superior Court for postconviction relief, alleging the ineffective assistance of his counsel during trial.[5] He contended that his defense counsel was ineffective by failing, *inter alia*, to locate the complaining witness's medical records concerning the physical examination to which the prosecution alluded at Anderson's violation hearing.[6] In his postconviction-relief application, Anderson claimed the records would have shown that no evidence existed of any physical injury to the complaining witness. "The hearing justice, who also was the trial justice, denied the petition on the ground that Anderson had failed to satisfy the requirements of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." [7] *Anderson v. State*, 878 A.2d 1049, 1049 (R.I.2005) (mem.). In regard to the medical records, the hearing justice found that the probative value of such records "prepared a month after the incident, offered to prove that no molestation had occurred, was 'highly speculative.'" *Id.* at 1050.[8] The hearing justice also "pointed to the acquittal on one count of the indictment as testament to the effective representation that defendant received at trial." *Id.* On appeal, this Court affirmed the Superior Court's order denying Anderson's application for postconviction relief. *See id.*

In September 2001, during the pendency of his first postconviction-relief application, Anderson filed an additional application for postconviction relief, this time in regard to his probation violation. In that application, he alleged ineffective assistance ren-

5. Anderson's first application for postconviction relief was denied by the Superior Court without a hearing. On appeal, this Court remanded the case for further proceedings in accordance with *Shatney v. State*, 755 A.2d 130 (R.I.2000), which proceedings took place in June 2003. After a hearing on the matter, the Superior Court again denied Anderson's application.

6. Additionally, Anderson contended that his trial attorney failed to (1) request records from the Department of Children, Youth and Families; (2) fully exploit opportunities to impeach the complaining witness's credibility; and (3) object, on hearsay grounds, to the testimony of another witness. Anderson further "contended that defense counsel should have moved to admit, as a full exhibit, a page of the [complaining witness's] police statement, which had been edited by a police officer." *Anderson v. State*, 878 A.2d 1049, 1049 (R.I.2005) (mem.).

7. This Court implements the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), when assessing whether an applicant should be granted relief from a conviction because of ineffective assistance of counsel. *See Page v. State*, 995 A.2d 934, 942 (R.I.2010). "To satisfy this two-part inquiry, an applicant must prove that: '(1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.'" *Brown v. State*, 32 A.3d 901, 904 n. 3 (R.I.2011) (quoting *Torres v. State*, 19 A.3d 71, 76 (R.I.2011)).

8. We note that the medical records at issue were, in fact, prepared approximately three months after the alleged molestations.

dered by his counsel during his probation-violation hearing in 1995. Specifically, he argued that his counsel was ineffective for his lack of effort "to continue the [violation hearing] and seek [a] subpoena for the medical records in [his] case, rather than relying on the statement of the [s]tate's counsel at the time that the medical records indicated no apparent evidence of trauma." Because the medical records indicated what Anderson alleged to be "physiological evidence that could have been helpful to [the] [c]ourt in deciding the matter of the violation proceeding[,]" Anderson maintained that his counsel's failure to "investigate [the reports] and produce [them] in court" amounted to ineffective assistance and not "trial strategy." That application for postconviction relief was likewise denied by the Superior Court in February 2008.[9]

On July 25, 2005, Anderson filed a *pro se* petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, with the United States District Court for the District of Rhode Island.[10] In his petition, Anderson challenged his conviction based on the alleged denial of his Sixth Amendment right to counsel. The district court ordered the state to file copies of transcripts for three prior state court proceedings, including Anderson's trial; and, after reviewing those transcripts, in conjunction with the parties' arguments, recommended that the petition be dismissed with prejudice as lacking legal merit. *See Anderson v. A.T. Wall,* 2006 WL 1451555 (D.R.I. May 22, 2006).

 Undiscouraged by the results in all relevant appeals, the denials of his prior applications for postconviction relief, and the dismissal of his habeas corpus petition, Anderson filed the present postconviction-relief application on January 8, 2009, in Superior Court. In this application, Anderson alleged that the state possessed the June 1995 medical records regarding the complaining witness's physical examination, but had deliberately failed to provide them to trial counsel in response to pretrial requests for discovery under Rule 16(a)(5) of the Superior Court Rules of Criminal Procedure[11] and for exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[12] In response to Anderson's alle-

9. The Superior Court docket sheet in Anderson's postconviction-relief case challenging his probation violation indicates that a timely notice of appeal was filed on February 13, 2008. That appeal, however, appears to have been withdrawn since then.

10. Anderson set forth six grounds upon which he contended that his trial counsel was deficient, one of which involved his claim that his counsel failed to obtain the medical records here at issue.

11. Rule 16(a)(5) of the Superior Court Rules of Criminal Procedure reads:
 "(a) *Discovery by Defendant.* Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State:
 "* * *
 "(5) all results or reports in writing, or copies thereof, of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case and, subject to an appropriate protective order under paragraph (f), any tangible objects still in existence that were the subject of such tests or experiments[.]"

12. "In addition to the requirements imposed by Rule 16 and this Court's rulings as to discovery obligations, the Due Process Clause of the United States Constitution, as interpreted by the United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, 'requires that the state provide a criminal defendant with certain information.'" *De-Ciantis v. State,* 24 A.3d 557, 570 (R.I.2011)

gations,[13] the state, in its memorandum, maintained that G.L.1956 § 10–9.1–8 [14] served as a procedural bar to his prosecutorial-misconduct claim because this issue could, and should, have been raised in his first application for postconviction relief. The state further argued that Anderson failed to show that the medical records in question would have had an effect on the outcome of the trial.

A hearing on the instant postconviction-relief application occurred on May 17, 2010. At that hearing, Anderson argued that his claim was not barred by § 10–9.1–8 because the state's alleged withholding of the medical records was a clear discovery violation that fell within the statute's exception for permitting claims to proceed "in the interest of justice." According to Anderson, he did not receive the June 1995 medical records until November 2006, at which time Anderson was able to view them and discern that the records revealed evidence that Anderson contended was "relevant and exculpatory." At the hearing, Anderson's counsel explained that the medical records indicated

> "that not only was [*sic*] there no injuries, there was no tearing or cuts in her vagina, no evidence of any kind of trauma; that her hymen was still intact; that she could not even tolerate the internal exam given to her by Women & Infants' Hospital; that she had indicated to Women & Infants' Hospital way back in 1995 that she was sexually active. She indicated that her means of birth control was using condoms. Both those situations would be factual situations one could infer she was in fact at that point in time maybe even a virgin, even though claiming to be sexually active and using condoms."

Anderson argued that, had his trial counsel known of the specific details contained in the medical reports, "it would have affected his preparation and it would have affected his strategy during the course of [the] trial." Pointing to his acquittal on the digital penetration charge, Anderson contended that the jury had relied largely on the credibility of witnesses and that the medical records were significantly relevant to the complaining witness's overall credibility. Thus, Anderson argued, under *Brady* and Rule 16, the state erred in withholding the medical records from him during the trial.

At the hearing, the state countered that at no time did it deliberately fail to turn over medical records in its possession, despite the fact that the state had been aware of the physical examination. The state emphasized that every attorney who

---

(quoting *State v. McManus*, 941 A.2d 222, 229 (R.I.2008)). "In accordance with *Brady*, if a prosecutor has suppressed evidence that would be favorable to the accused and the evidence is material to guilt or punishment, the defendant's due-process rights have been violated and a new trial must be granted." *Id.* (quoting *McManus*, 941 A.2d at 229–30).

**13.** Prior to appointment of counsel, Anderson had also alleged ineffective assistance of counsel in his postconviction-relief application; however, that claim was not pursued in the Superior Court.

**14.** General Laws 1956 § 10–9.1–8 reads as follows:

"All grounds for relief available to an applicant at the time he or she commences a proceeding under this chapter must be raised in his or her original, or a supplemental or amended, application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief."

had represented Anderson since 1995 had also been aware of the existence of the records. Additionally, the state recounted the Superior Court's previous encounter with the medical-records issue with respect to Anderson's first application for postconviction relief. At that time, the hearing justice had noted the "highly speculative" nature of the physical examination of the complaining witness given its occurrence three months after the alleged molestation. Lastly, the state maintained that, because Anderson had the opportunity to raise his claim of prosecutorial misconduct in connection with his earlier application for postconviction relief, but failed to do so, his claim was barred in accordance with § 10–9.1–8.

In a bench decision rendered immediately after the hearing, the hearing justice denied Anderson's application for postconviction relief. Noting that, in his view, "[n]obody has had more bites at the jurisdictional apple than Randy Anderson[,]" the hearing justice "renew[ed] the sentiment" previously expressed by both the Superior Court and this Court that the "records were medically stale." He further articulated that, "under no stretch of the most elastic and fertile imagination, would [the] records have had any substantial or significant bearing" on the outcome of Anderson's trial. The hearing justice determined that any failure to produce the medical records was not deliberate in nature and thus "not a *Wyche* type of failure." [15] Citing the United States Supreme Court's holding in *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the hearing justice also concluded that the state's nondisclosure did not rise to the level of such seriousness that there was "a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281, 119 S.Ct. 1936. The hearing justice recounted Anderson's acquittal of the digital penetration charge and found that the medical records would have been "of little or no value to a factfinder in the context of [Anderson's] trial." Given the absence of prejudice to Anderson, the hearing justice found that the nondisclosure of the medical records did not constitute a violation of *Brady.*

In coming to his decision denying Anderson's postconviction-relief application, the hearing justice also considered whether the medical records constituted newly-discovered evidence. Deeming the records as discoverable since 1995, "merely cumulative and impeaching[,]" and unlikely to have changed the verdict at trial, the hearing justice rejected the notion that the medical records could have been considered newly-discovered. [16] Lastly, the hearing justice determined that Anderson's prosecutorial-misconduct claim "should have been raised a long time ago in a prior post-conviction relief application."

---

**15.** The hearing justice was citing to this Court's opinion in *State v. Wyche,* 518 A.2d 907 (R.I.1986), in which we held that

"[w]hen the failure to disclose is deliberate, this [C]ourt will not concern itself with the degree of harm caused to the defendant by the prosecution's misconduct; we shall simply grant the defendant a new trial. * * * The prosecution acts deliberately when it makes 'a considered decision to suppress * * * for the very purpose of obstructing' or where it fails 'to disclose evidence whose high value to the defense

could not have escaped * * * [its] attention.' " *Id.* at 910 (quoting *United States v. Keogh,* 391 F.2d 138, 146–47 (2nd Cir. 1968)).

**16.** On appeal, Anderson does not contend that the medical records meet the standard for newly-discovered evidence. *See Reise v. State,* 913 A.2d 1052, 1056 (R.I.2007) (outlining the test employed by Rhode Island courts in granting a new trial based on newly-discovered evidence).

Final judgment was entered on May 17, 2010, denying the postconviction-relief application. Anderson filed a timely notice of appeal on May 19, 2010.

## II

### Issues on Appeal

Anderson advances three issues on appeal. He first contends that the trial justice erred in finding his prosecutorial-misconduct claim to be barred. Anderson argues that he did not obtain the medical records until 2006 (after his first application) and that the information was thus not previously "available" to him.[17] Second, Anderson maintains that the trial justice erred in determining that the state's failure to produce the medical records did not constitute a discovery violation. Lastly, Anderson contends that the trial justice erred in concluding that the medical records would have been "of little or no value to a factfinder in the context of [his] trial," because the medical records would have gone to undermining the complaining witness's credibility.[18]

## III

### Standard of Review

■ "The postconviction remedy, set forth in G.L.1956 § 10–9.1–1, provides that 'one who has been convicted of a crime may seek collateral review of that conviction based on alleged violations of his or her constitutional rights.'" *Rice v. State*,

38 A.3d 9, 16 (R.I.2012) (quoting *Lynch v. State*, 13 A.3d 603, 605 (R.I.2011)). This Court will not impinge upon the fact-finding function of a hearing justice in reviewing an application for postconviction relief "absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence in arriving at those findings." *Chapdelaine v. State*, 32 A.3d 937, 941 (R.I.2011) (quoting *Gordon v. State*, 18 A.3d 467, 473 (R.I.2011)). "However, when a decision regarding postconviction relief 'involv[es] questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights,' this Court's standard of review is *de novo.*" *State v. Laurence*, 18 A.3d 512, 521 (R.I. 2011) (quoting *Washington v. State*, 989 A.2d 94, 98 (R.I.2010)). Nonetheless, "[e]ven when the *de novo* standard is applied to issues of constitutional dimension, we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference in conducting our review." *Rice*, 38 A.3d at 16 (quoting *Laurence*, 18 A.3d at 521). "An applicant who files an application for postconviction relief bears the burden of proving, by a preponderance of the evidence, that such relief is warranted." *Mattatall v. State*, 947 A.2d 896, 901 n. 7 (R.I.2008).

## IV

### Discussion

■ Before this Court can consider the merits of Anderson's postconviction-

---

17. We note that in his appellate materials, Anderson shies away from his "interest of justice" contention proffered at the postconviction-relief hearing and instead argues that the grounds upon which he bases his present claim were not "available" to him at the time he filed his first application.

18. Specifically, Anderson maintains that because the medical records indicated "no evidence of trauma by visual inspection" and that the complaining witness was "unable to

tolerate [an] internal exam," the records could have been used to significantly undermine the complaining witness's credibility at trial by revealing inconsistencies in prior statements about her sexual history. We note that the medical records also say that the complaining witness "states [the] alleged incident occurred 3/95. It is now 6/95 and any injuries that would have occurred at that time would have healed by this time."

relief claims, we must first determine whether his claims are procedurally precluded pursuant to § 10-9.1-8, as proffered by the state. "Section 10-9.1-8, which codifies * * * the doctrine of *res judicata* within the postconviction-relief context, bars 'relitigation of the same issues between the same parties' after a final judgment has entered in a prior proceeding." *Brown v. State*, 32 A.3d 901, 910 (R.I.2011) (quoting *Figueroa v. State*, 897 A.2d 55, 56 (R.I.2006) (mem.)). "An applicant is likewise precluded from raising new issues in a subsequent application, where such issues were not set forth in the first postconviction-relief application, and the applicant fails to establish a reason why his or her claims could not have been presented initially." *Id.* (citing *Ramirez v. State*, 933 A.2d 1110, 1112 (R.I.2007)). "Under § 10-9.1-8, an applicant is permitted to assert an otherwise estopped ground for relief only if it is in the 'interest of justice.' " *Ferrell v. Wall*, 971 A.2d 615, 621 (R.I.2009).

■■■ On appeal, Anderson avers that his claim of prosecutorial misconduct is not precluded because the medical records at issue were not "available" to him until 2006, when he first "discovered the extent of relevant, exculpatory information those records contained." In asserting this argument, Anderson relies on the language of § 10-9.1-8 that bars "[a]ll grounds for relief *available* to an applicant at the time he or she commences a [postconviction-relief] proceeding" that are not "raised in his or her original, or a supplemental or amended, application." (Emphasis added.) Because his first postconviction-relief application was denied in 2000, Anderson contends this particular ground for relief

was not "available" to him at the time he filed that application, as contemplated by the postconviction-relief statute.

However, upon review of Anderson's application, the hearing justice found otherwise, noting that Anderson had "notice" of the medical records in 1995 and "that the defense, through different counsel" had known about the documents since that time. Our review of the record brings us to the same conclusion—that the grounds upon which Anderson constructs his prosecutorial-misconduct claim were certainly "available" to him at the time he commenced his first postconviction-relief proceeding. Although Anderson did not actually view the medical records until 2006, the records' existence—as well as the fact that the records concerned the complaining witness's physical examination—was made known to Anderson's defense counsel at the probation violation hearing in June 1995. At no time between the violation hearing in 1995 and Anderson's trial in 1998 did either party procure the medical records from the hospital.[19] Moreover, in Anderson's first application for postconviction relief, filed in 2000, he proffered an ineffective-assistance-of-counsel claim premised specifically on his trial counsel's alleged failure "to locate the [complaining witness's] medical records, which [Anderson] claimed would show no evidence of any physical injury to the [complaining witness]." *Anderson*, 878 A.2d at 1049. Notably, the same claim was also presented in his collateral postconviction-relief application filed in 2001 in connection with his representation in the June 1995 probation violation hearing. Undoubtedly, because Anderson was capable of asserting an ineffective-assistance-of-counsel claim

---

19. As asserted during the postconviction-relief hearing on the application presently before the Court, the state apparently did not procure or possess the medical records after

notifying Anderson's counsel at the violation hearing of the complaining witness's physical examination at the hospital.

stemming from the non-procurement of the medical records in his first postconviction-relief application filed over a decade ago, he was likewise able to set forth a claim based on the alternative theory that the prosecution failed to produce the records for trial.

Thus, this Court concludes that Anderson's prosecutorial-misconduct claim could have, and should have, been raised in his first postconviction-relief proceeding. "Under § 10–9.1–8, parties cannot bring forth new claims in subsequent applications that could have been, but were not, raised in the first postconviction-relief application—absent an 'interest of justice' showing." *Ramirez*, 933 A.2d at 1112. Our review reveals that Anderson has failed to make such a showing here. He offers this Court not one passable reason as to why this challenge could not have been raised in connection with his previous postconviction-relief application, particularly in light of his prior counsels' notice of the records' existence and his previous allegations of deficient assistance by trial counsel for not procuring the same records. *See Miguel v. State*, 924 A.2d 3, 4–5 (R.I.2007) (mem.); *State v. DeCiantis*, 813 A.2d 986, 993 (R.I.2003). His neglect to raise this allegation at that point "results in a bar to the litigation of that issue and that claim for relief." *Ferrell*, 971 A.2d at 621.

Additionally, we view Anderson's attempt to distinguish his present theory of the medical records' significance (impeachment of the complaining witness's credibility) from the theory posited in his first postconviction-relief application (physiological evidence of no trauma) as guilefully

futile. Both of his theories are rooted in what was known to Anderson as early as 1995—that the physical examination produced no evidence of trauma. This Court has held that an applicant for postconviction relief cannot evade the preclusive effects of *res judicata* upon a successive claim simply by presenting the same issue under an alternate theory. *See Carillo v. Moran*, 463 A.2d 178, 182 (R.I.1983). Accordingly, we deem Anderson's allegation of prosecutorial misconduct to be barred under § 10–9.1–8 as a matter of law.

■ Based on our conclusion that Anderson's allegation of prosecutorial misconduct is barred under § 10–9.1–8, we need not address whether that claim had any possible merit. However, we would be inclined to agree with the hearing justice's findings that the medical records would have been "of little or no value to a factfinder in the context of [Anderson's] trial" given the "medically[-]stale" nature of the records, as well as Anderson's acquittal on the digital-penetration charge asserted against him.[20] Furthermore, the record indicates that the state never possessed the medical records nor deliberately failed to produce the reports. *Cf. State v. Adams*, 481 A.2d 718, 724 (R.I.1984) (expert's report referring to a bite mark, and a cast taken thereof, was a relevant and material element of the state's case, and nondisclosure of report and cast to defense was deliberate despite state's original intent to use neither at trial). Thus, this Court concurs with the hearing justice's determination that no violation of either Rule 16 or *Brady* occurred as alleged by the applicant.

**20.** This Court has previously recognized that Anderson

"was represented at trial by a highly skilled and respected court-appointed lawyer, who undertook a lengthy and pointed cross-examination of the complaining witness spanning more than 100 pages of trial transcript. Notwithstanding this advocacy, the jury chose to believe the complainant and returned a verdict of guilty on one of two counts." *Anderson*, 878 A.2d at 1050.

## V

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.