**Supreme Court**

No. 2010-213-Appeal.

(WM 09-642)

Joseph Jolly                    :

v.                    :

A.T. Wall.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Joseph Jolly          :

v.          :

A.T. Wall.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**   Joseph Jolly (Jolly or applicant) appeals from a Superior Court judgment dismissing his application for postconviction relief.  This case came before the Supreme Court for oral argument on December 6, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### I

### Facts and Travel

In February 2008, Jolly was charged by indictment with three counts of second-degree child molestation in violation of G.L. 1956 § 11-37-8.3 and one count of first-degree child molestation in violation of § 11-37-8.1.  On April 2, 2009, Jolly appeared before a justice of the Superior Court to enter pleas of nolo contendere to the three counts of second-degree child molestation.  Pursuant to the plea agreement, the charge of first-degree child molestation was dismissed under Rule 48(a) of the Superior Court Rules of Criminal Procedure.

- 1 -

The transcript of the plea hearing, which was entered into evidence at Jolly's postconviction-relief hearing, reveals that the hearing justice engaged in a thorough colloquy with Jolly before he accepted the plea.[1] Among other things, the hearing justice asked Jolly whether he was "under the influence of <u>any substance</u>" at that time. (Emphasis added.) Jolly replied that he was not. Jolly also confirmed that he had discussed his plea affidavit with his attorney. After reviewing the various rights that Jolly would be waiving by pleading to the charges, the hearing justice asked the prosecutor to review the facts underlying those charges. Jolly confirmed that the facts as recited by the prosecutor were correct.

The hearing justice then found that Jolly was "acting freely and voluntarily in entering his nolo plea" and was "fully cognizant of * * * the consequences of that plea and corresponding waiver of his constitutional rights." He also indicated that he was "satisfied * * * that there [was] a factual basis for the plea or pleas as to each count." After the hearing justice accepted Jolly's plea, he imposed a sentence of twenty years imprisonment, with five years to serve and fifteen years suspended, with probation.

Approximately five months later, on September 11, 2009, Jolly filed an application for postconviction relief. In that filing, Jolly claimed that his conviction should be vacated because (1) his plea was involuntary and (2) he had been denied his constitutional right to the effective assistance of counsel. As grounds for his assertion that the plea was involuntary, the petition alleged that Jolly was under the influence of prescription medication during the plea hearing. As grounds for his claim that he had been deprived of his right to the effective assistance of counsel, the petition alleged that Jolly's attorney had forced him to plead to the charges and had advised him not to tell the court about the medication he had taken that day.

---

[1] Although the title page of the transcript is incorrectly dated April 2, 2008, the first page indicates the correct date.

A hearing on Jolly's application for postconviction relief was held over the course of five days during January and February of 2010. The same justice who had accepted Jolly's plea of nolo contendere (less than one year earlier) presided over the postconviction-relief hearing. Five witnesses testified at that hearing: Jolly; his mother-in-law, Beverly Mortimore; his wife, Beverly Jolly; his sister-in-law, Belinda Braga; and his sister, Carol Stanton.

Jolly testified that he retained his attorney soon after police contacted him regarding allegations of child molestation. Later, after Jolly was indicted, he told his attorney that he was not guilty and wanted to go to trial on the charges. Jolly paid his attorney a substantial sum of money with the understanding that this fee was required to take the case to trial. Jolly averred that his attorney initially told him that he believed he was innocent and that the complaining witness was lying.

According to Jolly, in February or March of 2009, his attorney's attitude about the case "completely changed," and he told Jolly that he "should start thinking about taking a plea." Jolly testified that his attorney told him that he had "lost to the judge" and that Jolly "didn't exactly know what it meant."[2] At first, when his attorney told Jolly that he should consider taking a plea, Jolly told him that "this [wasn't] right" and that he was innocent. At some point, however, Jolly told his attorney that he would consider taking a plea. Jolly testified that he came to this decision after his attorney told him that, if he did not take a plea, he might not see his young daughter growing up.[3]

---

[2] The docket sheet for the underlying charges against Jolly reveals that his motion to suppress evidence was denied in February 2009.

[3] On cross-examination, Jolly explained that his daughter was about nine months old in April 2009. As we note below, Jolly faced potentially severe penalties if convicted of first-degree child molestation.

Jolly testified that he had another change of heart the night before his plea hearing took place. That night, Jolly called his attorney and left a message on his answering machine, stating that he "wasn't going to take the plea." When his attorney called him back, Jolly did not want to answer. Jolly's attorney then called Jolly's wife on her phone and asked to speak with Jolly. Jolly testified that he spoke with his attorney for "well over an hour" that night regarding whether he should take a plea.[4]

The next day, on April 2, 2009, Jolly went to court for the plea hearing. That morning, Jolly took several different prescription medications. One of those medications was lorazepam, which Jolly was supposed to take three times a day as needed for anxiety.[5] When Jolly woke up that morning, he took one lorazepam pill. He took another one on the way to the courthouse and a third pill when he arrived at the courthouse. Before Jolly and his relatives went to lunch, he met briefly with his attorney. Jolly told him that he did not want to take the plea and that he "had to take a lot of meds just to do this." According to Jolly, his attorney advised him not to tell the court about taking those medications and that he "had to be convincing." He said that his attorney continued to pressure him to take a plea.

Immediately before the hearing, which was in the afternoon, Jolly took three more lorazepam pills. Jolly recalled that, after consuming six lorazepam pills in total, he felt "out of it" and "kind of relaxed." When asked on direct examination why he took so many pills that day,

---

[4] Mrs. Jolly's phone records were admitted into evidence as proof that these telephone calls had occurred. The phone records and her testimony revealed that these conversations took place not on the eve of the plea hearing, as Jolly had recalled, but two nights before the plea hearing. This inconsistency is immaterial to our decision.

[5] Although Jolly testified that he was supposed to take lorazepam "three times a day or as needed," records admitted into evidence at the postconviction-relief hearing indicate that the drug was to be taken "three times a day as needed." (Emphasis added.)

- 4 -

Jolly testified that he did so because he was innocent and did not want to plead to the charges. Jolly averred that he took his medications with him to the hearing, at his attorney's direction.

Following what he said was his attorney's advice, when the hearing justice asked Jolly whether he was under the influence of any substance, he did not mention the medications he had taken. Jolly recalled—and the transcript of the plea hearing confirms—that, at the conclusion of the hearing, his attorney mentioned to the hearing justice that Jolly had a medical condition involving blood clots in his lungs. The hearing justice confirmed that a list of Jolly's medications would accompany him to prison and ordered him medically assessed upon entry.

Jolly was cross-examined extensively on several topics, including: his medications; his relationship with his attorney; his prior charges and convictions;[6] the plea hearing; and his efforts toward postconviction relief. When the prosecutor asked Jolly if he "knew what it meant" to plead nolo contendere when he did so on April 2, 2009, he admitted that he did know what it meant, but claimed that his attorney had forced him to enter the plea.

Four of Jolly's relatives also testified at the postconviction-relief hearing. Each of these witnesses recounted, from her perspective, the events that Jolly had described. Their testimony was more or less consistent with his version of those events. Because Carol Stanton did not attend Jolly's plea hearing (unlike his other relatives), she did not testify about that day's events.

The state presented no witnesses at the postconviction-relief hearing. On February 25, 2010, the hearing justice denied Jolly's application for postconviction relief. In a bench decision, he explained that "based on [his] view of the testimony and the evidence presented, the

---

[6] April 2009 was the fourth occasion on which Jolly entered a plea of nolo contendere to criminal charges. He had previously pled nolo contendere to (1) a charge of domestic disorderly conduct, in February 2007; (2) two counts of assault with a dangerous weapon and one count of malicious destruction of property, in September 1989; and (3) a charge of driving while intoxicated, in May 1989.

ineffective [assistance of] counsel claim really boils down to a reiteration of the prior claim [regarding the voluntariness of Jolly's plea] * * *." He found that "no evidence [had] been presented" that would support another basis for Jolly's claim of ineffective assistance of counsel.

As for whether Jolly's plea was voluntarily entered, the hearing justice noted that he had reviewed the transcript of the plea hearing and also had an "independent recollection" of that proceeding. He recalled "nothing unusual about Mr. Jolly's condition at the time [of the plea hearing]." The hearing justice credited Jolly's testimony that he had decided to plead to the charges in March 2009. Although he "[did not] doubt that between [March 2009] and the date the actual plea was entered * * * Mr. Jolly vacillated" about this decision, the hearing justice found that, "when [Jolly] came to court on April 2, [2009,] he had made up his mind [to plead to the charges]." The hearing justice found that, although Jolly's attorney had been "quite assertive" in advising Jolly to plead to the charges, Jolly's decision to do so was nonetheless his own voluntary choice. Finally, the hearing justice observed that, if Jolly had been found guilty at trial, he would have faced severe penalties, including a possible life sentence on the charge of first-degree child molestation.

An order entered on May 4, 2010, which effectuated the hearing justice's decision. Thereafter, Jolly timely appealed to this Court.[7]

---

[7] Jolly filed, pro se, a second application for postconviction relief in Superior Court in February 2011. On May 5, 2011, the same justice who had presided over the hearing on his first postconviction-relief application determined that Jolly's second application was premature. Jolly appealed that decision to this Court via a writ of mandamus. We denied Jolly's mandamus petition by order on October 11, 2012. Jolly's second application for postconviction relief is not at issue here.

## II

## Issues on Appeal

On appeal, Jolly argues that the hearing justice erred in dismissing his application for postconviction relief. First, Jolly asserts that he did not voluntarily plead to the charges. Second, he contends that his attorney rendered ineffective assistance of counsel in either (1) coercing him to plead to the charges or (2) advising him to tell the hearing justice that he was not under the influence of any substance, even though Jolly's attorney knew that he had taken prescription medication before the plea hearing. Jolly also suggests that the hearing justice should have drawn an adverse inference against the state from its failure to call his plea attorney to testify at the postconviction-relief hearing. We discuss these issues in turn.

## III

## Standard of Review

Rhode Island's statutory postconviction remedy is set forth in G.L. 1956 chapter 9.1 of title 10. "An applicant * * * for postconviction relief bears the burden of proving, by a preponderance of the evidence, that such relief is warranted." Anderson v. State, 45 A.3d 594, 601 (R.I. 2012) (quoting Mattatall v. State, 947 A.2d 896, 901 n.7 (R.I. 2008)). "[I]n the case of someone who has entered a plea of nolo contendere, '[t]he sole focus of an application for post-conviction relief * * * is the nature of counsel's advice concerning the plea and the voluntariness of the plea.'" Guerrero v. State, 47 A.3d 289, 300 (R.I. 2012) (quoting Gonder v. State, 935 A.2d 82, 87 (R.I. 2007)).

In reviewing an application for postconviction relief, "[t]his Court will not impinge upon the fact-finding function of a hearing justice * * * 'absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence in arriving at those findings.'"

Anderson, 45 A.3d at 601 (quoting Chapdelaine v. State, 32 A.3d 937, 941 (R.I. 2011)).  We employ a de novo standard of review with regard to "questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights * * *."  Id. (quoting State v. Laurence, 18 A.3d 512, 521 (R.I. 2011)).  Even when applying the de novo standard of review to such issues, however, "we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference * * *."  Id. (quoting Rice v. State, 38 A.3d 9, 16 (R.I. 2012)).

## IV

## Discussion

## A

## Voluntariness of Jolly's Plea and Ineffective Assistance of Counsel

Because Jolly's arguments concerning the voluntariness of his plea and his attorney's performance are interwoven, we analyze them in tandem.  At the postconviction-relief hearing, Jolly bore the burden of proving "that, but for his attorney's errors, he would not have entered a [nolo contendere] plea, but rather would have proceeded to trial."  Gonder, 935 A.2d at 87.  We discern no error in the hearing justice's conclusion that Jolly "ha[d] not sustained his burden of proof."  The hearing justice noted that his decision was based both "on [his] review of [the] transcript [of the April 2, 2009 hearing], and * * * also on [his] independent recollection of the proceedings [at that hearing]."  In our view, the colloquy at the plea hearing supports the hearing justice's finding that Jolly entered his plea voluntarily and without undue force or coercion from his attorney or any other source.  Jolly informed the hearing justice that he had earned a GED

and denied that he was under the influence of any substance.[8] He confirmed that he had reviewed the plea agreement with his attorney and averred that there was nothing he did not understand about it.[9] The record reflects no uncertainty, apprehension, or wavering on Jolly's part during the plea hearing. As this appeal shows, Jolly now apparently regrets his decision to plead to the charges. However, we conclude that on the critical day of April 2, 2009, he did so voluntarily.

We also agree with the hearing justice's finding that Jolly's attorney did not render ineffective assistance of counsel in pressuring him to plead to the charges. As we have recognized, "a court's examination of counsel's performance should be highly deferential." Moniz v. State, 933 A.2d 691, 696 (R.I. 2007) (citing Strickland v. Washington, 466 U.S. 668, 689 (1984)). Given that Jolly faced the possibility of a life sentence if convicted on the charge of first-degree child molestation and given that Jolly's motion to suppress evidence was unsuccessful, we cannot say that the hearing justice erred in finding that Jolly's counsel gave him sound advice to plead to the charges.

As to Jolly's assertion that his attorney should have advised him to inform the court that he had ingested prescription medication before the plea hearing, the hearing justice (who later presided over the postconviction-relief hearing) noticed nothing unusual about Jolly's physical or mental condition that day. Jolly's attorney was well aware that his client took various

---

[8] The better practice may be for the court to specifically inquire whether a defendant has taken "any drugs, alcohol or medication" before the plea hearing, as did the hearing justice in Gonder v. State, 935 A.2d 82, 86 (R.I. 2007). Phrasing the question this way would not only limit a defendant's ability to collaterally attack his or her conviction, but would also serve to ensure that a hearing justice is made aware of any substance that could conceivably affect a defendant's ability to enter a plea voluntarily. We emphasize, however, that we discern no error in the hearing justice's conclusions regarding Jolly's plea in this matter.

[9] As we observe in note 6, supra, this was the fourth occasion on which Jolly pled nolo contendere to criminal charges.

prescription medications. Before the plea hearing concluded, at the request of Jolly's attorney, the hearing justice ordered that a list of Jolly's prescription medications accompany him to prison. Jolly admitted that he had helped prepare this list, which his wife gave to his attorney for submission to the court.

We will not presume that Jolly's attorney advised his client to lie to the hearing justice about his medications, and we discredit Jolly's assertion that his attorney did so. See Moniz, 933 A.2d at 696. It would have made no sense for Jolly's attorney to attempt to conceal his client's intake of prescription medication, given that he later submitted a list of Jolly's prescriptions to the court. The actions of Jolly's attorney were "reasonable considering all the circumstances." Id. (quoting Strickland, 466 U.S. at 688).

"[I]t is well settled that a claim of ineffective assistance [of counsel] requires an applicant for postconviction relief to prove that the result of the proceeding would have been different were it not for the performance of his [or her] attorney." Hassett v. State, 899 A.2d 430, 437 (R.I. 2006). Because Jolly has failed to carry his burden of proof on this issue, we hold that the hearing justice correctly rejected his claim of ineffective assistance of counsel.

**B**

**State's Failure to Produce Jolly's Attorney at the Postconviction-Relief Hearing**

Finally, Jolly contends that the hearing justice should have drawn an adverse inference against the state based on its failure to call upon Jolly's plea attorney to testify at the postconviction-relief hearing. The state suggests that Jolly waived this argument since he did not raise it below. Jolly's postconviction counsel did not specifically urge the hearing justice to draw an adverse inference against the state based upon its failure to call Jolly's attorney as a witness, but she did point out that the state offered no evidence to controvert the testimony of

Jolly and his relatives. Although we conclude that Jolly has preserved this argument for our review, we hold that it is meritless.

"[A] litigant's unexplained failure to produce an available witness who would be expected to give material testimony in [sic] the litigant's behalf permits, but does not compel, a factfinder to draw an inference that had the witness testified, the testimony would have been adverse to the litigant." Retirement Board of the Employees' Retirement System of Rhode Island v. DiPrete, 845 A.2d 270, 294 (R.I. 2004) (quoting Belanger v. Cross, 488 A.2d 410, 412-13 (R.I. 1985)). Under this rule, the hearing justice could have chosen to draw an adverse inference against the state for its failure to call Jolly's attorney (assuming arguendo that he was available), but he was under no obligation to draw such an inference. Furthermore, because Jolly's attorney was "equally accessible to both parties, no inference can spring from the failure of either party to call [him]." State v. Rogers, 687 A.2d 1242, 1243 (R.I. 1996) (quoting Avarista v. Aloisio, 672 A.2d 887, 892 (R.I. 1996)).

As the party who bore the burden of proof on his postconviction-relief application, Jolly cannot fault the state for choosing not to call his attorney to testify at the hearing. We discern no error in the hearing justice's conclusions on the issues presented, and we reject Jolly's argument on this point.

# V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the record in this case.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        Joseph Jolly v. A.T. Wall.

**CASE NO:**        No. 2010-213-Appeal.
(WM 09-642)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  February 1, 2013

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**        Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**  Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Applicant:  Jodi M. Gladstone, Esq.

For State:  Lauren S. Zurier
Department of Attorney General