January 14, 2025

**Supreme Court**

No. 2023-115-Appeal.
(PC 19-5658)
 No. 2023-143-Appeal.
(PC 19-6685)

In re CVS Health Corporation          :
      Securities Litigation.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2023-115-Appeal.
(PC 19-5658)
No. 2023-143-Appeal.
(PC 19-6685)

In re CVS Health Corporation     :
        Securities Litigation.

Present:  Suttell, C.J., Robinson, and Lynch Prata, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.**  In this consolidated action, the plaintiffs, City of Warren Police and Fire Retirement System (the City) and David Freundlich (collectively, plaintiffs[1]), appeal from a judgment of the Superior Court dismissing the entirety of plaintiffs' Revised Amended Consolidated Complaint (RACC).  The RACC alleged violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the Securities Act).  For the reasons set forth herein, we affirm the judgment of the Superior Court.

---

[1] Pursuant to an order issued on May 31, 2023, the Court consolidated the appeals of the City and Mr. Freundlich.

- 1 -

## Facts and Travel

We derive the following facts from plaintiffs' RACC, which, for the purposes of a motion to dismiss, are assumed to be true. *EDC Investment, LLC v. UTGR, Inc.*, 275 A.3d 537, 542 (R.I. 2022). This is a consolidated securities action brought on behalf of persons who acquired CVS Health Corporation (CVS) common stock issued after CVS's 2018 merger with Aetna (the merger). Both plaintiffs acquired CVS common stock via the merger. The plaintiffs aver that the registration statement, prospectus, and all other documents (the offering documents) relating to the merger violate §§ 11, 12, and 15 of the Securities Act because they contained misstatements of fact and omitted certain information.

CVS is a Delaware-incorporated company with its principal place of business in Woonsocket, Rhode Island.[2] CVS has over 9,800 retail locations, with more than 1,100 walk-in clinics, and manages over 94 million pharmacy plans. Its business is

---

[2] The additional named defendants are Larry J. Merlo (President, Chief Executive Officer, and Director), David M. Denton (Executive Vice President and Chief Financial Officer), Eva C. Boratto (Executive Vice President, Controller, and Chief Accounting Officer), David W. Dorman (Chairman of the CVS Board of Directors), Richard M. Bracken (Director on CVS Board of Directors), C. David Brown II (Director on CVS Board of Directors), Alecia A. DeCoudreaux (Director on CVS Board of Directors), Nancy-Ann M. DeParle (Director on CVS Board of Directors), Anne M. Finucane (Director on CVS Board of Directors), Jean-Pierre Millon (Director on CVS Board of Directors), Mary L. Schapiro (Director on CVS Board of Directors), Richard J. Swift (Director on CVS Board of Directors), William C. Weldon (Director on CVS Board of Directors), and Tony L. White (Director on CVS Board of Directors). They are collectively referred to as "defendants" or CVS.

broken into three segments: Corporate (Corporate), Pharmacy Services (Pharmacy), and Retail/Long Term Care (LTC). The Retail/LTC segment sells merchandise and prescription drugs.

In connection with the November 18, 2018 merger, CVS issued about 274.4 million shares of its common stock to former Aetna shareholders. The plaintiffs submit that "[e]ach former share of Aetna common stock issued and outstanding immediately before the [m]erger was converted into the right to receive 0.8378 shares of newly issued CVS common stock and $145 per share in cash." CVS's stock price on November 28, 2018, closed at $80.27 per share. The plaintiffs' complaint alleges that the offering documents contained materially false and misleading statements concerning the health of CVS's LTC business after its purchase of Omnicare, Inc. (Omnicare), a provider of pharmaceuticals, consulting, and other healthcare services, on August 18, 2015 (the acquisition). The plaintiffs also take issue with CVS's compliance with generally accepted accounting principles (GAAP).

Omnicare primarily served skilled nursing facilities (SNFs)—which are in-patient rehabilitation and medical treatment centers—and assisted living facilities (ALFs)—which assist elderly adults who are "substantially unable" to live independently. Except for its specialty pharmacy business, Omnicare's operations became part of CVS's Retail/LTC segment. After the acquisition, CVS provided

that its "goodwill"[3] was about $9.1 billion, with $8.7 billion of that amount attributed to the Retail/LTC operating segment. Of the $8.7 billion amount, $6.5 billion was allotted to CVS's LTC reporting unit.

CVS touted that Omnicare's goodwill "represent[ed] future economic benefits expected to arise from the Company's expanded presence in the pharmaceutical care market, the assembled workforce acquired, expected purchasing and revenue synergies, as well as operating efficiencies and cost savings." The plaintiffs posit that GAAP requires at least an annual determination of goodwill impairment.

CVS's optimism about the acquisition rapidly faded, however, as it realized that Omnicare was "a business rife with problems that was quickly deteriorating." Omnicare had scaled back its operations prior to the acquisition to improve short-term profitability, and CVS continued that practice post-purchase. CVS purportedly ran Omnicare like its Retail segment and struggled to adapt to the "customer-focused" LTC business.

Customer service became the flash point during CVS's operation of Omnicare. Understaffing and budget shortfalls affected CVS's LTC segment. Resulting delays of prescription deliveries from CVS's underfunding angered its

---

[3] Black's Law Dictionary defines "goodwill" as "[a] business's reputation, patronage, and other intangible assets that are considered when appraising the business, esp[ecially] for purchase * * *." Black's Law Dictionary 834 (12th ed. 2024).

consumers, who purchased prescriptions from competitors with higher quality customer service. Several customers abandoned CVS for competitors. ALFs felt the greatest negative effects because residents were not obligated to use CVS's business at their facility. Penetration rates—or the rate of customers using in-house pharmacies versus unaffiliated providers—were "disturbingly low."

Competition was rampant for CVS in the LTC industry. Overworked managers struggled to adequately serve Omnicare's facilities and caused CVS's LTC customer service to continue to plummet. "[M]om and pop" pharmacies bested CVS with better customer service, and larger competitors provided faster prescription deliveries.

While CVS had problems of its own making, the LTC sector in general was plagued by low occupancy at nursing homes, sparse bed census, and customer reimbursement pressures, even prior to the acquisition. Low reimbursement rates for patients on Medicaid netted LTC facilities only eighty-nine cents for every dollar of cost, on average. Occupancy rates declined beginning in 2015 due to shifting patient preferences and increased ability for ALFs to accept typical SNF patients.

Between CVS's mismanagement of Omnicare and the downward trend in the LTC market, the goodwill allocated by CVS to its LTC business became impaired. An impairment test of the same revealed that the LTC unit's fair market value

exceeded its carrying value[4] by merely 1 percent in the third quarter of 2017. This was a stark decline from the 7 percent in which the fair market value exceeded the carrying value the year prior.

Just before the merger, on February 9, 2018, CVS filed its amended registration statement with the Securities and Exchange Commission (SEC) on Form S-4, and CVS further submitted a prospectus that included the CVS shares issued and exchanged in the merger. The plaintiffs allege that the offering documents "were negligently prepared, contained untrue statements of material fact, and omitted material facts both required by governing regulations and necessary to make the statements" not misleading. They claim that the documents overstated the value of the goodwill CVS allocated to the LTC unit after the acquisition and that CVS falsely stated that it complied with GAAP. The plaintiffs further aver that the offering documents misrepresented that the fair market value for the LTC unit still remained above the carrying value because CVS had used the annual impairment test results from the third quarter of 2017. The plaintiffs advance that CVS knew, or should have known, that the goodwill had already been impaired when the offering documents were released.

---

[4] "Carrying value," also termed "book value" is "[t]he value at which an asset is carried on a balance sheet." Black's Law Dictionary 225, 265 (12th ed. 2024).

The plaintiffs take issue with CVS's failure to perform an interim impairment test—as required by GAAP. GAAP mandates that an impairment test must be performed if "events or circumstances occur that would more likely than not * * * reduce the fair market value of a reporting unit below its carrying amount." GAAP provides circumstances in which impairment tests are required, including both entity-specific changes and market trends.

An interim impairment test, according to plaintiffs, would have put CVS on notice that the LTC segment had a substantial impairment that needed to be recognized. The full extent of the substantial impairment of the goodwill was revealed only after the shareholders approved the merger, despite factors that were allegedly present in the third quarter of 2017.

The 2017 Form 10-K[5] discussing CVS's goodwill indicated that an impairment test may be conducted if "the carrying value may not be recoverable" and, in the event impairment was present, it "could have a material adverse effect on our financial condition and results of operations." In the same document, CVS disclosed that it had $52.1 billion in goodwill and intangible assets and that $38.5

---

[5] A "Form 10-K" is "a comprehensive overview of the company's business and financial condition and includes audited financial statements." U.S. Securities and Exchange Commission, *Form 10-K*, Investor.gov, https://www.investor.gov/introduction-investing/investing-basics/glossary/form-10-k (last visited Jan. 9, 2025). Federal law mandates that publicly reporting companies file a Form 10-K annually. *Id.*

billion of that amount represented goodwill. It fully disclosed that the "LTC reporting unit exceed[ed] its carrying value by approximately 1%." (Emphasis omitted.) The 10-K noted that "it is possible that actual results could differ from the estimates used in our impairment tests." The form also emphasized that CVS was optimistic that the acquisition of Omnicare would "enhance our service offerings * * *."

The plaintiffs allege that CVS failed to disclose that cost-cutting at Omnicare would result in poor customer service and employment of less experienced CVS employees. According to plaintiffs, CVS's attempts to run Omnicare like its Retail business caused customers to look to competitors. The plaintiffs specifically take issue with the following misleading or non-disclosures in the offering documents: (1) the loss of customers in the LTC business; (2) deteriorating customer service; (3) operating Omnicare like a Retail business; (4) competition from companies with higher quality service; and (5) an inability to integrate acquired pharmacies into the LTC segment.

Moreover, plaintiffs assert that warnings to CVS of potentially poor performance from Omnicare had already occurred. For its part, the offering documents cautioned that client losses and failure to obtain new business might occur, termination of facility agreements could happen, the inability to integrate new business might happen, and "[a]ny one of these challenges or risks could impair our

- 8 -

ability to realize any benefit from our acquisitions after [CVS has] expended resources on them." (Emphasis omitted.) The plaintiffs postulate that these statements were false or misleading because CVS had already lost customers from cost-cutting, and the downturn in the LTC industry was going to prevent CVS from receiving a return on its Omnicare investment. The plaintiffs continue that the offering documents misrepresented that CVS had benefitted from acquiring Omnicare, that its goodwill was $38.5 billion in December 2017, and that it had performed an adequate impairment test.

The material omissions that plaintiffs claim were made by CVS in the offering documents include: (1) that CVS was experiencing revenue problems related to the acquisition; (2) that the SNFs were not performing as anticipated; (3) that CVS's goodwill was overstated; (4) that more capital was needed to "achieve the synergies" contained in the offering documents; and (5) that growth was impaired by industry trends. The plaintiffs allege that, at the time of filing this suit, CVS's stock price had dipped all the way to $52.36 per share, an almost 35 percent decline after the merger. The plaintiffs state that the post-merger price of the stock lagged significantly behind the New York Stock Exchange composite.

On May 13, 2019, the City initiated this action by filing a three-count complaint in Superior Court alleging violations of §§ 11, 12(a)(2), and 15 of the Securities Act. After the City amended its original complaint, defendants moved on

August 20, 2019, to stay the matter, pending the adjudication of defendants' motion to dismiss a case in the Supreme Court of New York in *Labourers' Pension Fund of Central and Eastern Canada v. CVS Health Corp. et al.*, Index No. 651700/2019 (*LPF*). The defendants asserted that *LPF* was similar to the City's action and that the New York court's adjudication of the motion to dismiss in *LPF* would "have substantial bearing" on the Superior Court's decision. The Superior Court denied that motion on October 2, 2019.

Subsequently, and pursuant to Rule 42(a) of the Superior Court Rules of Civil Procedure, the Superior Court consolidated the City's matter with a similar action, *David Freundlich v. CVS Health Corporation, et al.*, PC 19-6685. On March 2, 2020, defendants filed their motion to dismiss the entirety of plaintiffs' complaint pursuant to Rule 12(b)(6). In their motion, defendants argued that plaintiffs failed to state a claim under well-established securities pleading requirements. The plaintiffs, in their objection to the motion to dismiss, insisted that they had pled a securities claim by alleging that CVS had overstated its goodwill, misstated other critical financial information, and omitted facts from its offering documents. This, according to plaintiffs, sufficiently stated claims for violations of the Securities Act. Instead of ruling on the motion to dismiss, the Superior Court stayed the action pending adjudication of *LPF* and another securities action, *Anarkat v. CVS Health*

- 10 -

*Corp.*, No. 1:19-cv-00437 (*Fire Fighters*),[6] on September 1, 2020. The Superior Court relied on the "first to file" rule, which, the court explained, allows the first of two similar cases filed in different jurisdictions to proceed while the other is stayed.

Thereafter, on June 17, 2021, plaintiffs filed a motion to vacate the stay—a motion which asserted that plaintiffs' claims were substantively distinguishable from the other securities actions—and to amend their complaint; plaintiffs later submitted the RACC on September 8, 2021. After the Appellate Division of the Supreme Court of New York (the New York Court) dismissed *LPF* and the United States Court of Appeals for the First Circuit affirmed the dismissal of *Fire Fighters*, the Superior Court lifted the stay on September 28, 2022.[7] On October 7, 2022,

---

[6] This action was later renamed *City of Miami Fire Fighters' and Police Officers' Retirement Trust v. CVS Health Corporation*, by stipulation. *City of Miami Fire Fighters' and Police Officers' Retirement Trust v. CVS Health Corporation*, 519 F. Supp. 3d 80, 80 n.1 (D.R.I. 2021). Both *LPF* and *Fire Fighters* were filed as class actions.

[7] The Appellate Division of the Supreme Court of New York in *LPF* court concluded that a group of CVS's shareholders "failed to plead an actionable opinion * * * because it did not identify any embedded facts in the opinion on goodwill" and the shareholders "failed to plead an actionable opinion * * * because the nature of the inquiry in forming the opinion was disclosed and [the shareholders do] not allege that the stated methodology was not followed." *Labourers' Pension Fund of Central & Eastern Canada v. CVS Health Corporation*, 144 N.Y.S. 3d 16, 17-18 (N.Y. App. Div. 2021). Likewise, the court in *Fire Fighters* affirmed the dismissal of CVS shareholder claims brought pursuant to the Securities and Exchange Act of 1934, holding that the plaintiffs failed to sufficiently allege "facts about the state of the LTC business at particular points in time to enable [the court] to conclude that any of the goodwill write-downs were too late or that * * * [the] alleged misstatements contradicted the state of the business as it then stood." *City of Miami Fire Fighters'*

- 11 -

defendants filed a renewed motion to dismiss pursuant to Rule 12(b)(6), arguing again that plaintiffs did not plead that CVS made false or misleading statements, that plaintiffs could not support §§ 12 or 15 claims, and that *LPF* and *Fire Fighters* should be followed and the RACC dismissed. The plaintiffs countered that the RACC contained allegations that differed from those proffered in *LPF* and *Fire Fighters*, that the offering documents included a multitude of falsehoods and misstatements, and that plaintiffs had sufficiently alleged claims under §§ 12 and 15. Notably, plaintiffs vigorously contended that they had stated a viable securities action over defendants' objection, and neither party asked the Superior Court to invoke the doctrine of *res judicata*.

In an order dated February 20, 2023, the Superior Court granted defendants' motion to dismiss, holding that plaintiffs' action is barred because of collateral estoppel, that the rulings from *LPF* and *Fire Fighters* were persuasive and the court agreed with those holdings that plaintiffs had failed to state a claim upon which relief could be granted, and principles of judicial economy favored dismissal. The Superior Court made its collateral estoppel ruling *sua sponte*, as neither party argued that issue. The plaintiffs timely appealed.[8]

---

*and Police Officers' Retirement Trust v. CVS Health Corporation*, 46 F.4th 22, 31 (1st Cir. 2022).

[8] By order dated December 4, 2023, this Court directed the Superior Court to enter judgment along with Mr. Freundlich's notice of appeal in PC 19-6685 and to thereafter transmit the record to this Court.

**Standard of Review**

"The sole function of a motion to dismiss is to test the sufficiency of the complaint." *Maltais v. Maltais*, 306 A.3d 449, 452 (R.I. 2024) (quoting *Jenkins v. City of East Providence*, 293 A.3d 1267, 1270 (R.I. 2023)). "In passing on a Rule 12(b) dismissal, this Court applies the same standard as the trial justice." *Id.* (quoting *Jenkins*, 293 A.3d at 1270). "We thus are confined to the four corners of the complaint and must assume all allegations are true, resolving any doubts in plaintiffs' favor." *Id.* (quoting *Jenkins*, 293 A.3d at 1270).

Nevertheless, "allegations that are more in the nature of *legal* conclusions rather than factual assertions are not necessarily assumed to be true." *DiLibero v. Mortgage Electronic Registration Systems, Inc.*, 108 A.3d 1013, 1016 (R.I. 2015) (brackets omitted) (quoting *Doe ex rel. His Parents and Natural Guardians v. East Greenwich School Department*, 899 A.2d 1258, 1262 n.2 (R.I. 2006)). "A motion to dismiss may be granted only 'if it appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any conceivable set of facts.'" *Narragansett Electric Company v. Minard*, 21 A.3d 274, 278 (R.I. 2011) (brackets omitted) (quoting *Estate of Sherman v. Almeida*, 747 A.2d 470, 473 (R.I. 2000)).

**Discussion**

**Collateral Estoppel**

The plaintiffs first argue that the Court should reverse the trial justice's decision to preclude plaintiffs' action because collateral estoppel was never argued to the Superior Court, the trial justice incorrectly applied the collateral estoppel framework, and due process bars the exercise of collateral estoppel. In his order, the trial justice concluded that plaintiffs "in this matter are the same persons as the prior actions." Although the trial justice did not specifically discuss whether the classes had been certified in *Fire Fighters* and *LPF*, he did note that plaintiffs here are "the same or * * * completely subsumed" by the parties in those cases. He therefore held that, after analyzing all three collateral estoppel requirements, the action was precluded.

"Under the doctrine of collateral estoppel, 'an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings.'" *Paolino v. Commonwealth Engineers & Consulting, Inc.*, 318 A.3d 209, 215 (R.I. 2024) (quoting *Commercial Union Insurance Company v. Pelchat*, 727 A.2d 676, 680 (R.I. 1999)). "The application of collateral estoppel requires '(1) an identity of issues; (2) a final judgment on the merits; and (3) an establishment that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action.'" *Id.* (quoting

- 14 -

*Providence Teachers Union, Local 958, American Federation of Teachers, AFL-CIO v. McGovern*, 113 R.I. 169, 172, 319 A.2d 358, 361 (1974)).

Based on general adherence to the principle that uncertified class actions cannot bind nonmembers of the class, courts have declined to determine that privity exists for collateral estoppel. *See, e.g., Villagrana v. Graham*, 60 Fed. Appx. 713, 715 (10th Cir. 2003) (declining to preclude the plaintiff's action because of a lack of privity between her and uncertified members of a prior class action); *cf. Salatino v. Chase*, 939 A.2d 482, 490 (Vt. 2007) ("[N]otice to members of a certified class is required because when a previously certified class action is dismissed or settled, it will have a res judicata or collateral estoppel effect on class members."). "A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party." Restatement (Second) *Judgments* § 41 (Oct. 2024 Update).

The classes of plaintiffs were not certified in *Fire Fighters* and *LPF*, therefore we are constrained from determining that plaintiffs are in privity with the class members in those cases. Indeed, defendants concede as much, offering that they "do not dispute that collateral estoppel does not apply here because the putative plaintiff classes in *LPF* and *Fire Fighters* were not certified when the other courts dismissed those claims." Accordingly, the trial justice erred by relying on collateral estoppel in dismissing plaintiffs' complaint. This does not, however, conclude our analysis.

**Waiver**

The defendants assert that plaintiffs waived an appeal challenging the Superior Court's determination that the RACC was not viable on the merits because plaintiffs' initial brief focused on the trial justice's collateral estoppel ruling alone. The defendants point to Rule 16 of the Supreme Court Rules of Appellate Procedure and plaintiffs' brief—which defendants claim failed to address the merits of the trial justice's decision beyond collateral estoppel—as support for their position.

The plaintiffs denied that they waived an appeal of the merits of the Superior Court's determination by stating "there was no decision on the merits." (Emphasis omitted.) They contend that the Superior Court's brief adoption of the persuasive determinations in *Fire Fighters* and *LPF* could not have been a merits adjudication because those courts applied different pleading standards.

"[T]his Court staunchly adheres to the raise or waive rule." *State v. Mosley*, 320 A.3d 942, 974 (R.I. 2024) (quoting *State v. Barros*, 148 A.3d 168, 174 (R.I. 2016)). We have held that issues a party has failed to brief are deemed waived. *See, e.g.*, *Rice v. State*, 38 A.3d 9, 16 n.10 (R.I. 2012). Arguments "first decided by the trial court and then not raised in [this] Court by an appellant—either in the appellant's brief, or, for cases placed on the show-cause calendar, in that party's prebriefing or supplemental show-cause statements—are deemed waived * * * for

purposes of the appeal at issue * * *." *Stebbins v. Wells*, 818 A.2d 711, 720 (R.I. 2003); *see also Carrozza v. Voccola*, 90 A.3d 142, 163 n.23 (R.I. 2014).

Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure provides that the appellant's brief must include, *inter alia*, "[a] specification of the errors claimed[,]" "[t]he specific questions raised[,]" and the exact relief a moving party seeks. In addition to these requirements, Rule 16(a)(6) declares that "[e]rrors not claimed, questions not raised, and points not made ordinarily will be treated as waived and not be considered by the Supreme Court." Succinctly put, Rule 16(a) requires appellants to raise and fully develop arguments on appeal. *North Farm Home Owners Association, Inc. v. Bristol County Water Authority*, 315 A.3d 933, 942 n.4 (R.I. 2024). Failing to raise the question that plaintiffs now ask us to review is at odds with Rule 16(a)(6) of Article I of the Supreme Court Rules. *See Terzian v. Lombardi*, 180 A.3d 555, 558 (R.I. 2018).

In their counterstatement filed before full briefing was ordered, defendants extensively argued that the trial justice properly concluded that plaintiffs failed to state a legally viable securities' action. The plaintiffs' "[q]uestions [r]aised on [a]ppeal" section of their full brief, however, refers only to collateral estoppel or *res judicata*, simply asking:

> "1. Whether Defendants waived their collateral estoppel
> or res judicata defenses?

- 17 -

"2. Whether the Superior Court misapplied the doctrine of collateral estoppel?"

The plaintiffs could have easily opted to include an alternative question by which they addressed the merits of their complaint or the trial justice's comity determination in the event other bases existed for dismissing the RACC aside from collateral estoppel. In the Superior Court, on at least two separate occasions, plaintiffs spilled considerable ink arguing the merits of their contention that they pled claims under the Securities Act. For reasons unbeknownst to this Court, plaintiffs decided to pose only two questions for our review, neither of which ask us to opine on the trial justice's decision to dismiss the merits of the RACC.

Further, "[o]ur precedent clearly establishes that we are precluded from concluding that a plaintiff has complied with Rule 16(a) when that plaintiff 'raised questions' in his or her brief but did so 'without accompanying those general statements with meaningful arguments, analysis, discussion, or citation [to] authority.'" *Terzian*, 180 A.3d at 558 (brackets and deletions omitted) (quoting *Horton v. Portsmouth Police Department*, 22 A.3d 1115, 1130 (R.I. 2011)). "What is more, we will not 'scour the record to identify facts in support of the plaintiff's broad claims, and we will not give life to arguments that the plaintiff has failed to develop on his own.'" *Id.* (quoting *McMahon v. Deutsche Bank National Trust Co.*, 131 A.3d 175, 176 (R.I. 2016) (mem.)).

We have made this clear on several occasions. In *Estate of Meller v. Adolf Meller Co.*, 554 A.2d 648 (R.I. 1989), we declared: "We believe that it is not inappropriate for us to expect, and indeed to demand that the briefs before us will contain all the arguments that the parties wish us to consider and not to inform ourselves by seeking out memoranda that may have been filed before another tribunal." *Estate of Meller*, 554 A.2d at 654. Likewise, in *McGarry v. Pielech*, 108 A.3d 998 (R.I. 2015), a plaintiff appealing an employment discrimination claim was barred from pressing his appeal because he failed to raise or argue a ruling of the trial justice. *McGarry*, 108 A.3d at 1006-07. After declining to consider that portion of the plaintiff's appeal, we stated that "the briefs before us will contain all the arguments that the parties wish us to consider." *Id.* at 1007 (quoting *Estate of Meller*, 554 A.2d at 654). We reaffirmed this *McGarry* tenet a few months later in *Renewable Resources, Inc. v. Town of Westerly*, 110 A.3d 1166 (R.I. 2015). *See Renewable Resources*, 110 A.3d at 1173. Courts elsewhere have made similar determinations. *E.g.*, *McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 800 F.2d 1208, 1210 (D.C. Cir. 1986) ("We generally will not entertain arguments omitted from an appellant's opening brief and raised initially in his reply brief."); *see* 5 Am. Jur. 2d *Appellate Review* § 479 (footnote omitted) (stating that, although there are some discrete exceptions, the general rule among courts throughout the nation is that

"a court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief"); *see also id.* at §§ 478, 481.

The plaintiffs allocate approximately one page of their brief to support their position that the Superior Court's dismissal of the RACC was not a decision adjudicating the merits of plaintiffs' claims and inexplicably delayed their Securities Act analysis until their reply brief. The plaintiffs aver that, "[r]ead in context," the portion of the order "is part of the Superior Court's collateral estoppel analysis, not a separate legal analysis justifying dismissal." The plaintiffs' position that the trial justice did not dismiss the matter on the merits is unconvincing. The trial justice concluded his collateral estoppel analysis and then proceeded to adopt the "persuasive reasoning and findings" of the *LPF* and *Fire Fighters* decisions. The plaintiffs failed to take up the fact that the Superior Court *did* address the merits of the RACC. After all, "a dismissal, with prejudice, constitutes a final judgment on the merits." *Goodrow v. Bank of America, N.A.*, 184 A.3d 1121, 1128 (R.I. 2018) (quoting *DiPinto v. Sperling*, 9 F.3d 2, 4 (1st Cir. 1993)). The order states that "[p]laintiffs' claims under the RACC are dismissed with prejudice."

The Court views the trial justice's adoption of the "persuasive reasoning and findings" of the *Fire Fighters* and *LPF* courts as an adjudication of the merits of the RACC, separate and apart from the trial justice's collateral estoppel rationale. In his order, after opining that collateral estoppel precluded plaintiffs' allegations, the trial

justice prefaced his comparison to *Fire Fighters* and *LPF* with a statement that he was addressing "the ultimate issue as to whether CVS made false or misleading statements in its public securities documents * * *." We view this language as unequivocally confronting the merits of plaintiffs' claims, albeit briefly, because the trial justice concluded that plaintiffs alleged substantially similar violations of securities laws rejected by the New York court in *LPF* and the First Circuit in *Fire Fighters*. *See Labourers' Pension Fund of Central & Eastern Canada v. CVS Health Corporation*, 144 N.Y.S. 3d 16, 17-18 (N.Y. App. Div. 2021); *City of Miami Fire Fighters' and Police Officers' Retirement Trust v. CVS Health Corporation*, 46 F.4th 22, 31-34 (1st Cir. 2022). We have not previously opined that a trial justice is prohibited from largely adopting by reference the findings of another court in a similar matter, and we decline to do so now. Here, it is clear from the record that all parties were intimately aware of the issues and conclusions contained in both cases addressed by the Superior Court.

There was a multitude of briefing that occurred in the Superior Court where, generally, plaintiffs stated that CVS's offering statements "contained multiple material misstatements and omissions" and breaches of defendants' duty to disclose information related to their goodwill. The plaintiffs specifically identified purported violations of Items 105 and 303 of SEC Regulation S-K. The plaintiffs declared that failing to adhere to GAAP made CVS's disclosures misleading and incomplete.

- 21 -

Additionally, plaintiffs dismissed the notion that their claims were barred by *Omnicare, Inc. v. Laborers District Council Construction Pension Fund*, 575 U.S. 175 (2015).[9] Finally, plaintiffs posited that CVS's statements about risk factors were actionable because those factors had already occurred.

In response to these arguments in the Superior Court defendants contended, *inter alia*, that plaintiffs failed to state a viable securities claim because none of defendants' statements in the offering documents were false at the time they were made, and plaintiffs cannot argue that defendants should have presented the information it did differently. The defendants also averred that plaintiffs failed to allege facts that supported their position that a different goodwill opinion should have been reached earlier or that "no reasonable investor could have believed that the issues [p]laintiffs claim were omitted did not exist." (Quoting *City of Miami Fire Fighters' and Police Officers' Retirement Trust v. CVS Health Corporation*, 519 F. Supp. 3d 80, 98 (D.R.I. 2021).) In the Superior Court, defendants also advanced that

---

[9] In *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 173 (2015), the Supreme Court of the United States held that § 11 claims for false statements are only actionable when shareholders can show the opinions in a company's offering documents were not believed or the facts supporting those opinions were untrue, and that § 11's omission provision can create liability if a registration statement omits material facts concerning the issuer's knowledge of the statement of opinion and "those facts conflict with what a reasonable investor would take from the statement * * *." *Omnicare*, 575 U.S. at 185-86, 189.

the RACC proffers no facts that defendants failed to consider in reaching its goodwill opinion.

Clearly, plaintiffs were well acquainted with the argument that the RACC failed to state a viable claim under the Securities Act.  The plaintiffs could have repackaged the same arguments they made a half dozen times in the course of this litigation for our review and still complied with Rule 16(f)'s generous word count. *See* Rule 16 of Article I of the Supreme Court Rules.  Further, plaintiffs' preference to wait until their reply brief to address defendants' stance on the viability of plaintiffs' securities claims was misguided.  The plaintiffs' initial brief provides defendants "indicated in their Counterstatement that they intend to argue that the Superior Court dismissed Plaintiff's claim on the merits and that the Order can be sustained on that basis.  Should Appellees renew that argument in their brief, Appellant will address it further in reply."  Because of the extensive briefing in the Superior Court and the Rule 12A statements filed in this Court, plaintiffs were aware that defendants would assert that the RACC was dismissed on the merits by the Superior Court.

It is inappropriate for an appellant to reserve the right to "wait and see" what the appellee may say in their initial brief and then respond by way of a Rule 16(c) brief.  Courts across the country have rejected this practice. *See, e.g., Bitner v. Department of Corrections & Rehabilitation*, 304 Cal. Rptr. 3d 145, 156 n.3 (Cal.

Ct. App. 2023). As defendants' counsel aptly stated at oral argument, plaintiffs were "sandbagging" by waiting until a reply brief to develop an argument. *See Sparkle Hill, Inc. v. Interstate Mat Corporation*, 788 F.3d 25, 29 (1st Cir. 2015); *see also Wilson v. Fairhaven Police Department*, No. 21-1711, 2023 WL 9690610, at *1 (1st Cir. Sept. 13, 2023) ("[A]rguments raised for the first time in appellant's reply brief also are waived."). For these reasons, we discern no reasonable basis for plaintiffs' "punt" to their reply brief and conclude that plaintiffs have waived any appeal on the merits. *See* Rule 16 of Article I of the Supreme Court Rules.

Finally, plaintiffs' initial brief neglected to address the trial justice's determination that the RACC must be dispatched "in the best interest of judicial economy[.]" Once again, this analysis conducted by the trial justice, although brief, was separate and apart from his collateral estoppel conclusion. The plaintiffs do nothing to challenge this holding; instead they belabor the same argument in reply that the order was "a de facto application of collateral estoppel[.]" By not analyzing judicial economy and comity principles as an independent basis for dismissing the RACC in its initial brief, the issue is waived.

**Costs**

Lastly, CVS seeks costs incurred from responding to the plaintiffs' appeal pursuant to both G.L. 1956 §§ 9-22-9 and 9-22-20. The request does not contain any argument, meaningful or otherwise, as to why the statutory provisions they cite

- 24 -

justified an award of costs, much less what they mean by "costs"—i.e., court costs or attorneys' fees. *See Terzian*, 180 A.3d at 558 (holding that a lack of "meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue") (quoting *Horton*, 22 A.3d at 1130). Thus, this issue is likewise deemed waived.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The papers shall be returned to the Superior Court.


Justice Goldberg and Justice Long did not participate.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re CVS Health Corporation Securities Litigation. |
| **Case Number** | No. 2023-115-Appeal.<br>(PC 19-5658)<br><br>No. 2023-143-Appeal.<br>(PC 19-6685) |
| **Date Opinion Filed** | January 14, 2025 |
| **Justices** | Suttell, C.J., Robinson and Lynch Prata, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Thomas L. Laughlin, IV, *Pro Hac Vice*<br>Thomas W. Lyons, III, Esq. |
| | For Defendants:<br><br>Amanda M. MacDonald, *Pro Hac Vice*<br>Robert C. Corrente, Esq. |